S,TATE *ex rel.* K. I. McKAY v. T. C. KELLER, as Tax
Collector of the City of Tampa.

191 So. 542
En Banc
Opinion Filed October 20, 1939

*Howard P. Macfarlane, C. Fred Thompson, Frank T. Phillips, Henry H. Cole, Calvin Johnson, Knight & Thompson, Sutton & Reaves, McKay, McFarlane, Jackson & Ramsey* and *Mabry, Reaves, Carlton & White,* for Relator;

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Respondent.

CHAPMAN, J.—This is a case of original jurisdiction. It was by petition made to appear that the relator, K. I. McKay, is a practicing attorney and a member of a firm composed of several partners in the City of Tampa; that under Section 307 of the Compiled Ordinances of the City of Tampa he was due said City as an annual license tax upon lawyers the sum of $25.00, and on January 28, 1939, made application to the respondent City for a license to practice law in the City of Tampa from October 1, 1938, to September 30, 1939, and tendered to it the sum of $25.00 and requested of the city the issuance of a license for the full license year under Section 307 of the Compiled Ordinances of the City.

The relator further represented to the respondent city that from October 1, 1937, to September 30, 1938, the members of his law firm composed of K. I. McKay, Howard P. Macfarlane, W. H. Jackson, Maynard Ramsey, Chester H. Ferguson, and J. Herndon; that Maynard Ramsey died December 21, 1938, and Tom Alexander has since become a member of the firm; that the gross receipts of the firm obtained by the practice of the law exceeded the sum of $50,000.00 for the preceding license and calendar year; that the relator's net income therefrom for the license year, after deducting all expenses of the firm, exceeded the sum of $10,000.00. These facts were made known to the respondent at the time a license was demanded.

The respondent denied the request of the relator and refused to issue the demanded license on the ground that under certain provisions of Ordinance No. 689-A it was necessary that the relator make known the exact amount of his gross receipts and to pay an additional amount thereon, as required by said ordinance. The relator contended that he was entitled to the issuance of the occupational license under Section 307 of the Compiled Ordinances and that Ordinance No. 689-A is invalid and unenforceable.

The pertinent or material portions of Ordinance No. 689-A to be considered in deciding this case are, viz.:

"PROFESSIONS

"Attorneys, physicians, surgeons, chiropractors, osteopaths, naturopaths, electro therapists, veterinarians, architects, dentists, civil engineers, surveyors, optometrists and chiropodists, the license tax shall be determined and measured by the gross receipts derived from the practice of the particular profession, in the following manner:

:"When the gross receipts derived from the practice of the

profession during the 12 months period ending September 30, 1938, was $2,500.00 or less—$25. When the gross re-' ceipts for the said twelve months period was in excess of $2,500.00 the license tax shall be measured by an amount equal to $25.00 for the first $2,500.00 plus an amount equal to $10.00 for each additional $1,000.00, using said gross' receipts as a measure.

"Applications for license shall be made under oath on forms to be furnished by the city tax collector and shall state therein that the gross receipts derived from the practice of the applicant's profession for the 12 months period ending September 30, 1938, was not in excess of the amount as set forth in said application.

"It is intended that the foregoing classification shall be a license tax for the professions as named and nothing contained in this ordinance shall be construed as meaning or intending that such tax be an ad valorem tax, or a property tax, or an income tax or a tax on income, or other than a license tax."

It is contended that the ordinance No. 689-A is void, invalid and unenforceable as against the relator for many reasons. It is not necessary to set out *in extensio* the several reasons but some three or four will be sufficient to dispose of the case at bar, and these grounds are, viz.:

"That the classification as contained in said ordinance is unreasonable and arbitrary as between relator and other attorneys in different classes with respect to the gross receipts derived by them from the practice of their profession, in that it attempts to impose, in addition to the $25.00 tax imposed by the aforesaid Section 307, when the gross receipts of attorneys, derived from the practice of their profession during the twelve months period ending September 30, 1938, were in excess of $2,500.00, to be

measured by an amount equal to $10.00 for each additional $1,000.00 over and above the first $2,500.00 using said gross receipts as a measure; that said attempted classification is wholly whimsical, unreasonable and arbitrary and has no relation to the rights, privileges or immunities to be exercised or enjoyed by the licensee in any of said classes; that it merely attempts to impose a tax in a different amount and at a different rate on one attorney because he has exercised the privilege of practicing law more frequently or in more remunerative matters.

. That classification as contained in said ordinance is unreasonable and arbitrary and discriminatory as against relator as compared with classifications of other businesses or occupations as made by other ordinances passed as a part of the same general taxing scheme in that ordinance No. 607-A life insurance agencies are required to pay an additional tax for an agency having from 1 to 5 agents or solicitors in the sum of $10.00 and an additional sum of $5.00 for each additional 5 agents or fractional part thereof; that said license on said occupations are not based upon nor do they have any relation to the income of such agencies and the taxes imposed would ordinarily amount to an infinitesimal percentage of the gross income of such agencies; that by Ordinance No. 689-A retail merchants are taxed only $10.00 for the privilege of conducting a store and an additional sum of $2.00 on each $1,000.00 of sales, or 1/5 of 1% on gross sales in excess of $3,000.00 and the wholesale merchants are taxed 60 cents on each $1,000.00 of sales; that under the aforesaid ordinance an attorney who has derived gross receipts from the practice of his profession of $10.500.00 would pay as much tax as a retail merchant with gross sales of $50,000.00 or a wholesale merchant ·with gross sales of $160,000.00; that said

discrimination is unreasonable, arbitrary and whimsical and has no relation to the ability to pay nor to the rights, privileges and immunities enjoyed or exercised by the licensee.

"That the license fee of $25.00 charged by the City of Tampa, under Section 307 aforesaid is in itself the highest license fee charged by any of the principal cities of the State except Pensacola and Key West, as will appear from a schedule attached hereto and made a part hereof as exhibit 2, which shows the license fees charged attorneys by the principal cities of Florida, and any license tax upon relator in excess thereof is unreasonable and excessive; that if said Ordinance 689-A is enforced against relator he will be required to pay as a license to the City of Tampa for the privilege of practicing law therein a sum in excess of $95.00; that said sum is grossly excessive and unreasonable; that the so-called measure by which the amount of license tax relator is required to pay is attempted to be determined is unreasonable, arbitrary and discriminatory in that it is not based upon any advantage relator has over any other person engaging in the same profession or upon any other element or basis, excepting income alone, that is not common to all attorneys practicing their profession in the City of Tampa. That said ordinance is an attempt to levy a tax upon the income of relator, in violation of the provisions of Section 11, Article IX, of the Constitution of the State of Florida."

The respondent filed a motion to quash the alternative writ of mandamus previously issued in this cause. Section 11 of Article IX of the Constitution of Florida adopted at the general election of 1924, providing that no tax upon the income of residents or citizens of Florida shall be levied by the State of Florida or under its authority is, viz.:

"No tax upon inheritances or upon the income of residents or citizens of this State shall be levied by the State of Florida, or under its authority, and there shall be exempt from taxation to the head of a family residing in this State, household goods and personal effects to the value of Five Hundred ($500.00) dollars."

Income taxes are of ancient origin but have become prominent in this country within the past few years when an amendment to the Federal Constitution was adopted authorizing the collection of such a tax. Many of the States of the Union have imposed an income tax and the legal machinery therefor is patterned largely or to a great extent after the Federal laws. Express power to tax incomes is conferred by the Constitution or constitutional amendments in several of the States, but the people of Florida have never granted such power to the taxing authorities of this State. On the other hand, at the general election of 1924 the people adopted Senate Joint Resolution No. 135, Acts of 1923, Laws of Florida, to the effect that no tax upon inheritances or upon the income of residents or citizens of Florida shall be levied by the State of Florida or under its authority. See Section 11 of Article IX of the Constitution of Florida, *supra*.

It is clear that by the adoption of this amendment the people of Florida intended that an income tax should not be levied by the State of Florida on its residents or citizens. Cooley on Taxation, Vol. 4 (4th Ed.), page 3477, par. 1741, says an income tax has been defined as one which relates to the product or income from property or from business pursuits but taxable income may result from other sources. 31 Corpus Juris, page 396, par. (1), defines Income, viz.:

" 'Income' is a broad, comprehensive, flexible, inclusive, and generic term, capable of definition. Although it has a

well defined meaning, not only in common speech, but also under judicial construction, there appears to be some difficulty about its precise and scientific definition. It may not have exactly the same meaning in different instruments; its definition may cover a variety of specific meanings. The meaning of the term is not to be found in its bare etymological ·derivation; it is rather to be gathered from the implicit assumptions of its use in common speech. Its specific meaning in a particular case is governed by the intent of the parties as deduced from the context, the subject matter of the contract, and the character of the person contracting. Generally the term may be defined as meaning all that comes in; that which has come in, and not that which might have come, but did not; that which comes in, not that which comes in less an outgoing; that which comes in, or is received from any business or investment of capital, without reference to the outgoing expenditures; the balance of gain over loss; the gross amount received· by a person; the interest of money or stock in funds, etc.; what a person can add to his stock or spend; what comes in; what has come in; what is left after paying the expenses of earning income. 'Income' is applicable particularly to individuals, the term not being strictly appropriate to corporations."

An income can be derived from many sources: from invested capital, from labor, from the exercise of skill, ingenuity or sound judgment, earnings from a calling, interest, receipts of a profession, business or occupation; revenue, royalties, salaries, rents and from other sources, but it is the manifest intention of the people of Florida that a tax on income shall not be levied by the State of Florida or under its authority. Income defined: See 26 R. C. L., pages 147-8, par. 120.

The rules used in construing statutes are in general ap-

plicable in construing the provisions of a Constitution. In giving effect to the rights secured by the Constitution, the courts are required to consider the substance of things and should not be controlled by form or technical procedure. See Haynes v. State, 71 Fla. 585, 72 So. 180. A construction that nullifies a specific clause will not be given to a Constitution unless absolutely required by the context. ·See State *ex rel.* West v. Butler, 70 Fla. 102, 69 So. 771. In construing a constitutional provision the leading purpose should be ascertained to effectuate the intent and object designated to be accomplished. See Sullivan v. Tampa, 101 Fla. 298, 134 So. 211. The intent of the organic law is the essence of the law and such intent may be shown by implications and intendments: the implied provisions of organic law are as effective as the expressed provisions. See Getzen v. Sumter County, 89 Fla. 45, 103 So. 104. The object of constitutional construction is to ascertain and effectuate the intention and purpose of the people in adopting it. The intent and purpose is the spirit of the Constitution. The spirit of the Constitution may be found in those implications and intendments which clearly flow from the express mandates of the Constitution when considered in the light of circumstances and historical events leading up to its adoption. See Amos v. Mathews, 99 Fla. 1, 126 So. 308. The conclusion is irresistible that the people of Florida, in adopting Section 11 of Article IX, *supra,* desired that the income of the citizens and residents of Florida should not be taxed by the State of Florida, and it is duty of this Court to construe this provision so as to effectuate the will and intention of the people. See Fairbanks v. United States, 181 U. S. 283, 21 Sup. Ct. 648, 45 Law Ed. 862.

The ordinance in question provides that the relator shall make oath on forms to be provided by the city tax collector

that the gross receipts from the practice of his profession for the 12 months period ending September 30, 1938, was not in excess of the amount set forth in the application. It likewise provided that when the gross receipts for the 12 months period were in excess of $2,500.00 the license tax shall be measured by an amount equal to $25.00 for the first $2,500.00, plus an amount equal to $10.00 for each additional $1,000.00, using the gross receipts as a measure. The license tax of the relator, under the provisions of the ordinance in question, would be the sum of $95.00. The tax is based on the gross receipts derived from the practice of the law on the part of the relator.

It is contended by counsel for the respondent that Ordinance No. 689-A does not fall within the inhibitions of Section 11 of Article IX but that the city has ample charter power to levy a license or occupational tax upon lawyers and cites the case of Young v. Thomas, 17 Fla. 169, 35 Am. Rep. 93. We believe this conclusion to be sound as to the levy of a license or occupational tax on lawyers. The record here shows that the relator tendered to the City of Tampa the sum of $25.00 and requested a license to practice law as provided by Section 307 of the Compiled Ordinances of the City of Tampa. The power of the city to levy a license or occupational tax against attorneys is generally admitted by all the parties to this suit.

Counsel for respondent further contends that the right to enforce Ordinance No. 689-A is fully sustained and put at rest by the case of Amos v. Gunn, 84 Fla. 285, 94 So. 615. This case involved the constitutionality and validity of Chapter 8411, Laws of Florida, Acts of 1921, which Act imposed a tax of one cent per gallon on sales of products within the State after they had lost their interstate character as an excise tax, which is in effect a license tax, and the

law-making power of the State may impose excise or license taxes within its discretion unless restrained by organic or paramount provisions of the law. The case was decided in 1922 and Section 11 of Article IX was not adopted by the people until the general election of 1924.

In the case of City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744, a suit was brought by the City of Lakeland in the lower court to restrain the Comptroller from enforcing Chapter 15658, Acts of 1931, Laws of Florida, in so far as the Act applied to the plaintiff as a municipal corporation. The Act imposed a tax upon all corporations, firms and individuals receiving payment for electric lights. The lower court dismissed the bill of complaint and the same was affirmed on appeal in this Court. It is contended that this case is authority to enforce Ordinance No. 689-A and collect $10.00 upon each $1,000.00 of the gross receipts of an attorney above the first $2,500.00. The opinion was by Mr. Justice Whitfield in which this Court held that the tax imposed was a license or excise tax on the corporation for the privilege of doing the business of selling electricity. The amount of the excise tax was to be determined by a percentage of the gross receipts derived from doing business in Florida. This Court said (text page 878):

"The tax imposed by the statute is a license or excise tax upon *all* corporations, firms and individuals * * * receiving payment for electricity for light, etc., the amount of the tax to be determined by reference to a stated percentage of the 'gross receipts derived from' the stated intrastate business occupations, which occupations are subject to license taxes. See Pullman Co. v. Knott, Comptroller, 70 Fla. 9, 69 So. 703; Afro-American Ind. & Benefit Ass'n. v. State, 51 Fla. 85, 54 So. 383; Orange State Oil Co. v. Amos, 100 Fla. 884, 130 So. 707. It is in no sense a 'tax upon the

income of residents or citizens of this State' within the terms or the intent of Section 11, Article IX, adopted in 1924 as a part of the Constitution of Florida. See Educational Films Corp. v. Ward, 282 U. S. 379. See also Pullman Co. v. Knott, 235 U. S. 23. The tax is on the corporation, firm or individual for the privilege of engaging in the business or occupation of selling electricity, etc., and not upon money received for sales, though the excise is measured by reference to gross receipts from such sales. It is imposed without reference to profits or net income. It is not directly or indirectly levied upon any property, but is imposed directly and exclusively upon the business transactions of selling electricity, etc. The tax is not upon earnings but upon the occupation or business of selling measured by reference to gross receipts from sales. * * * "

The case of Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654, involved an ordinance enacted by the City of Pensacola by the terms of which a tax of four cents was paid on the purchase of electricity, gas, water, and telephone service. Suit was brought to restrain the enforcement of this ordinance and a motion to dismiss the bill of complaint was sustained by the lower court and affirmed on appeal here. It was held that the ordinance imposed an excise tax on the privilege of purchasing service and commodities described in the ordinance. The levy of an income tax prohibited by Section 11 of Article IX was not involved.

In City of DeLand v. Public Service Co., 119 Fla. 804, 161 So. 735, a suit in chancery was brought to restrain the enforcement of an ordinance of the City of DeLand imposing a municipal tax equal to 10 per cent of the charge made by it on each and every sale of electricity. The lower court perpetually enjoined the enforcement of the ordinance and upon appeal was affirmed by this Court. The ordi-

nance does not impose a direct tax upon the gross receipts or gross income but is a tax for the privilege of doing business. This Court said:

"Whatever may be the powers of the Legislature under Section 11 of Article IX of the Constitution to impose, or authorize the imposition of, direct gross income taxes on *corporations*, insofar as such corporate taxation can be distinguished from the constitutionally prohibited tax upon the income of 'residents' or 'citizens' of this State (a point not necessary to be now decided), it is certain that such a direct gross income or gross revenue tax is special and extra-ordinary in its character and that it is not within the scope of the commonplace charter powers of taxation ordinarily conferred on a municipal corporation to levy and collect taxes. Nor is it clearly within a special charter power to levy and collect taxes upon all property privileges and professions capable of being taxed for State purposes, as that phrase is used by way of a general description of the special taxing power intended to be delegated by the Legislature to the municipality of DeLand under Sections 21, 99, 102 and 119 of its charter (Chapter 14466, Special Acts, 1925)."

It is not difficult to distinguish between an excise tax or tax on the privilege of engaging in an occupation or a sales tax or transaction tax or an indirect sales tax and hold that they are not controlled or fall within the inhibitions of Section 11 of Article IX of the Constitution as shown by the decisions, *supra*. The relator is an attorney and the receipts, either net or gross, cannot be classified as an excise tax, sales tax or tax on the privilege of practicing law within the meaning of Section 11 of Article IX whereby it is unlawful to levy on the income of citizens or residents of Florida on the part of the State of Florida. The learn-

ing and legal ability of an attorney are among his business assets and differ materially from capital invested in a mercantile business.

Ordinance No. 689-A is in contravention of and falls within the inhibitions of Section 11 of Article IX of the Constitution of Florida and is invalid and void as it applies to the relator. Careful consideration has been given to the briefs of counsel for the respective parties and the authorities cited have been examined. The motion to quash the alternative writ of mandamus filed on the part of the respondent is hereby denied.

It is so ordered.

TERRELL, C. J., WHITFIELD, BROWN and THOMAS, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—I cannot agree that the tax involved is one in contravention of Section 11 of Article IX of our Constitution. The tax is in my opinion purely an occupational license tax, the amount of which is based on gross earnings. The ordinance should be upheld in this regard on authority of City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744, and authorities there cited.