Richard A. BISHOP, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Richard A. BISHOP, Appellee.

Axel-Felix H. KLEIBOEMER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Axel-Felix H. KLEIBOEMER, Appellee.

Nos. 12871, 12872, 12920 and 12921.

District of Columbia Court of Appeals.

Argued May 10, 1978.

Decided April 20, 1979.

On Rehearing En Banc June 11, 1979.

John M. Bixler, Washington, D.C., with whom Ronald D. Aucutt, Washington, D.C., was on the briefs and supplemental memorandum of Richard A. Bishop.

Philip L. Kellogg, Washington, D.C., with whom James L. Lyons and Bradley G. McDonald, Washington, D.C., were on the briefs and supplemental memorandum of Axel-Felix Kleiboemer.

Louis P. Robbins, Acting Corp. Counsel, Washington, D.C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D.C., at the time the briefs were filed and the case was argued, Robert E. McCally, Deputy Corp. Counsel, Henry E. Wixon and Richard L. Aguglia, Asst. Corp. Counsel, Washington, D.C., were on the briefs and supplemental memorandum for the District of Columbia.

Roger C. Ohlrich, Edward M. Luria and Gregory Burr Macaulay, Washington, D.C., filed a brief on behalf of the Bar Association amicus curiae.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

On June 24, 1975, the District of Columbia Council (hereinafter the Council), pursuant to the District of Columbia Self-Government and Governmental Reorganization Act (hereinafter the Home Rule Act),[1] adopted the Revenue Act of 1975 (subsequently enacted as D.C. Law No. 1–23). The Act was signed by the Mayor and sent to both Houses of Congress for a 30-day review in accordance with § 602(c)(1) of the Home Rule Act.[2] It was not disapproved by a concurrent resolution and consequently became effective October 21, 1975.

The focus of the instant case is the validity of § 605 of the Revenue Act, codified at D.C. Code 1973, § 47-1574[3] (hereinafter the tax, the professional tax, or the unincorporated business tax), which repealed an existing "professional exemption," thereby allowing the District of Columbia to impose an unincorporated business tax upon unincorporated professionals and personal service businesses.[4] Appellant Bishop, a Vir-

---

1. District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (codified at D.C. Code 1978 Supp., §§ 1–121 to –171).

2. Section 602(c)(1) provides that no act of the Council "shall take effect until the end of the 30-day period" after it has been transmitted to Congress "and then only if during such 30-day period both Houses of Congress do not adopt a concurrent resolution disapproving such act." Pub.L. No. 93–198, 87 Stat. 813 (codified at D.C. Code 1978 Supp., § 1·147).

3. For the sake of clarity and uniformity, all subsequent references to the tax will be cited to the D.C. Code. When discussing the extension of the tax to professionals, we cite to the Revenue Act (of 1975).

4. Section 47 1574 was also the subject of litigation in two prior cases filed in the District of Columbia Courts. In the first case filed, *Committee for Fair Taxation of Professionals v. District of Columbia*, Civil Action No. 11269–75 (Sup.Ct. Feb. 14, 1977), a group of nonresident professionals sought declaratory and injunctive relief, claiming that § 47-1574 was an unauthorized exercise of the legislative powers of the Council and that it violated various provisions of the Constitution. On April 15, 1976,

ginia resident practicing law in the District of Columbia, and appellant Kleiboemer,[5] a Maryland resident also practicing in the District of Columbia, paid the District's unincorporated business tax for their respective 1975 calendar years, pursuant to § 47–1574. Appellants subsequently claimed a refund, and following denial of their claims at the administrative level, filed petitions for refunds in the Tax Division of the Superior Court, where their petitions were consolidated for trial.

On October 18, 1977, the trial court denied appellants' requests for refunds and dismissed their petitions with prejudice. It thereafter, sua sponte, ordered a rehearing on the provisions of the Act setting the effective dates of imposition of the tax. In a supplemental opinion dated October 27, 1977, the trial court held that imposition of the tax on members of the same class according to their respective tax years, calendar or fiscal, discriminated against the calendar year taxpayers in favor of the fiscal year taxpayers. Accordingly, the court fixed the time for the start of tax liability for all members of the class as of December 1, 1975—the earliest date on which the tax would apply to all taxpayers using the latest (December through November) fiscal year—and ordered the appropriate refunds to the class of affected taxpayers.

Appellants Bishop and Kleiboemer appealed the trial court's order of October 18; the District of Columbia cross-appealed the October 27 supplemental order.[6] Appellants contend on appeal that the professional tax (1) is an unauthorized exercise of the legislative powers of the Council under the Home Rule Act; (2) is in violation of several provisions of the United States Constitution; and (3) does not comply with the notice requirements of the Home Rule Act and City Council Resolution 1–1–2. Appellee argues that the trial court improperly held that the effective date provisions of the Act discriminate against calendar year taxpayers in favor of fiscal year taxpayers. For the reasons which follow, we reverse.

Appellants' initial challenge to § 47–1574 is that it is an *ultra vires* measure, enacted by the Council in violation of its delegated powers. Thus, the central issue is whether that section violates the limitation imposed on the legislative authority of the Council by § 602(a)(5) of the Home Rule Act (codified at D.C. Code 1978 Supp., § 1–147(a)(5)), which provides in pertinent part:

The Council shall have no authority . . to

\* \* \* \* \* \*

(5) impose any tax on the whole or any portion of the personal income, either directly or at the source thereof, of any individual not a resident of the District . . . .

The question is whether § 47–1574 imposes a tax on the personal income of nonresidents or whether the tax is levied on something other than income (*e. g.*, the privilege of doing business in the District). If the former is the case, the law is an impermissible exercise of the Council's legislative authority in the area of taxation and must be declared invalid.

The District of Columbia Revenue Act of 1947, Pub.L. No. 80–195, 61 Stat. 328, enact-

the District's motion for summary judgment was granted and the suit was dismissed. An appeal was taken but subsequently dismissed by consent of all parties as a result of the filing of the appeal in the instant case.

In the second case, *Commonwealth of Virginia v. District of Columbia*, Civil Action No. 76–0533 (D.D.C. June 1, 1976), the Commonwealth of Virginia, as parens patriae, brought a declaratory judgment action against the District of Columbia to have the professional tax declared void and unenforceable, stating the same claims as those raised in the *Committee* suit. On June 1, 1976, the Commonwealth's complaint was dismissed and on June 22, its

motion to vacate and reconsider its order and for a rehearing was denied. No appeal was taken.

5. Appellant Kleiboemer's suit was brought as a class action on behalf of all nonresident professionals subject to the tax in question. On October 17, 1977, the case was certified as a class action on behalf of all nonresident professionals subject to the tax and who had paid the tax, except for appellant Bishop.

6. Throughout this opinion, reference to appellants means appellants Bishop and Kleiboemer.

ed by Congress on July 16, 1947, imposed, *inter alia,* a tax on incorporated and unincorporated businesses for the privilege of carrying on a trade or business within the District and of receiving income from sources within the District. D.C. Code 1973, §§ 47–1571a, –1574b. The purpose of the unincorporated business tax was to

> impose a tax upon all business income which would be subject to the corporation franchise tax, if incorporated, regardless of whether the business is carried on by an individual, by a partnership, or by some other unincorporated entity. [Section 8–1(b) of the Regulations of the Government of the District of Columbia, promulgated August 28, 1947 (Title 16, DCRR Part 307, p. 122).]

In defining the term "unincorporated business," however, Congress excluded a trade or business

> which by law, customs or ethics cannot be incorporated . . . or any trade or business in which more than 80 per centum of the gross income is derived from the personal services actually rendered by the individual or members of the partnership or other entity in the conducting or carrying on of any trade or business and in which capital is not a material income producing factor. [*See* D.C. Code 1973, § 47–1574.]

When the Professional Corporation Act (P.L. No. 92–180, 85 Stat. 576 (1971)) was enacted, the D.C. Income and Franchise Act was amended to maintain the exemption for unincorporated professional associations. The legislative history indicates the following concerns underlying preservation of the exemption at that time:

> [r]epresentatives of the Bar Association, for example, stated they have opposed previous attempts to repeal this exemption on essentially two grounds. Both

the States of Maryland and Virginia grant a credit to their residents for income taxes paid to another jurisdiction on income generated in that jurisdiction. The District unincorporated business tax does not qualify for this credit since it is a *franchise tax* rather than an income tax. Accordingly, the professional who resides in Maryland or Virginia and conducts his practice in the District would, if his present tax exemption were removed, be subject to double tax on the net income for his practice. [H.R. Rep. No. 92–508, 92d Cong., 1st Sess. (1971) at 4 (emphasis supplied).]

Section 605 of the Revenue Act of 1975 repealed this professional exemption (by deleting the second sentence of § 47–1574),[7] thereby allowing the District of Columbia for the first time to impose the unincorporated business tax upon unincorporated professionals and personal service businesses, which, by their nature, do not require a physical nexus with the District in order to do business in the District. Therefore, the tax on the income of unincorporated businesses suddenly burdened the personal income of thousands of previously untaxed individuals who do not reside in the District. The issue is does this tax, in light of its incidents and effects, circumvent the stated intention of Congress.

Although the legislative history of § 602(a)(5) of the Home Rule Act (codified at D.C. Code 1978 Supp., § 1–147(a)(5)), is slight, we do know that by adopting the provision, Congress intended to prevent the District from enacting a commuter tax. Staff of the Senate Comm. on the District of Columbia, 93rd Cong., 1st Sess., Legislative History of the District of Columbia Self-Government and Governmental Reorganization Act 1469–70 (Comm. Print 1974).[8] A commuter tax, loosely defined, is

---

7. That sentence read:

   The words "unincorporated business" do not include any trade or business which by law, customs, or ethics cannot be incorporated, any trade, business, or profession which can be incorporated only under chapter 11 of title 29, or any trade or business in which more than 80 per centum of the gross income is

derived from the personal services actually rendered by the individual or members of the partnership or other entity in the conducting or carrying on of any trade or business and in which capital is not a material income-producing factor.

8. "[The Bill] states there shall not be a commuter tax, and it is very plain. Until Congress

a levy by a jurisdiction upon individuals who do not live in that jurisdiction but work there on a daily basis.[9] Although the levy could, conceptually, attach to any basis, Congress specifically provided in the act that the District of Columbia could enact no tax which levied upon personal income of nonresidents. In terms of art,[10] Congress' proscription meant that no commuter tax could be levied on net income.

The general definition of commuter tax presented above is, by necessity, overbroad. Indeed, it is the breadth of such a tax which presents us with problems here. Were the commuter tax a simple, discernible fiscal tool, we could simply look to the incidents of the tax and determine if they were on all fours with the tax presented here. Since such an endeavor is not possible, we must accept at their literal meaning the words Congress chose to use in prohibiting the commuter tax, namely, a "tax . . . on personal income" of nonresidents. In doing so, we can come to no conclusion other than that the professional tax is such a tax.

A conflict of authority presently prevails in neighboring jurisdictions as to whether this tax is an income tax. *Compare Gardella v. Comptroller of Maryland*, 213 Md. 1, 130 A.2d 752 (1957), *with Groom v. Forst*, At Law No. 18809 (filed March 30, 1978) (*aff'd on rehearing mem.*, Oct. 23, 1978). The issue in both *Gardella* and *Groom* was whether the tax paid pursuant to § 47–1574 was an "income tax" paid to a foreign jurisdiction. As an income tax, the amount paid to another state can be taken under both Maryland and Virginia law as a direct credit against income taxes paid to them. *See* Md. Code 1951, § 81–290; Va. Code

1974, § 58–151.015. Although both the *Gardella* and *Groom* courts addressed the threshold characterization question that we face herein—income versus franchise—those courts came to opposite conclusions. In *Gardella*, the Maryland Court of Appeals ruled that the unincorporated business tax is not an income tax; in *Groom*, the Circuit Court of Arlington County, Virginia, ruled that that same unincorporated business tax, as applied to professionals, is an income tax.[11] The *Groom* court based its ruling on the fact that the tax "seeks out a net gain or profit." As the court stated:

> Although this Congressional prohibition [§ 602(a)(5)] has served to protect nonresidents of the District of Columbia who are salaried employees or wage earners from D.C. income taxes, the removal of the exemption . . . by the D.C. Council had the effect of subjecting all persons engaged in business, self-employed trades or professional occupations *to the same* tax in another guise. [*Groom v. Forst, supra*, at 3 (emphasis supplied).]

■ As to the characterization of a tax, it is fundamental that the nature and effect of a tax, not its label, determine if it is an income tax or not. *E. g., Dawson v. Kentucky Distilleries*, 255 U.S. 288, 292, 41 S.Ct. 272, 65 L.Ed. 638 (1921); *Commissioner v. American Metals Co.*, 221 F.2d 134, 137 (2d Cir.), *cert. denied*, 350 U.S. 829, 76 S.Ct. 61, 100 L.Ed. 740 (1955); *New York and Honduras Rosario Mining Co. v. Commissioner*, 168 F.2d 745 (2d Cir. 1948). While it is true that mere legislative designation that a tax is of a particular character is not

repeals this there shall not be a commuter tax." *Id.* at 1469 (Statement of Rep. Rees, D. Calif.).

9. Of course, if there is a sufficient nexus between that individual and the jurisdiction, such as a corporation which does business exclusively within the jurisdiction, then the tax is no longer a commuter tax. For that and other obvious reasons, a commuter tax could be levied only on natural persons.

10. Absent a succinct statement of congressional intent to the contrary, we interpret the

words "impose a tax on the personal income of . . . nonresidents" by reference to their technical meaning as accepted by the courts, legislatures, and the tax bar.

11. The question of whether the unincorporated business tax as applied to professionals is in violation of the Home Rule Act was not before the Virginia court and was not addressed by that court. The sole issue in *Groom* was whether the Virginia taxpayer was entitled to a credit against his Virginia taxes.

controlling,[12] that designation is entitled to much weight. *County Commissioners of Anne Arundel County v. English*, 182 Md. 514, 522, 35 A.2d 135, 143 (1943); *accord, Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1910).

The District of Columbia Code calls this tax an unincorporated business franchise tax. Even if we were to find that in form and substance the unincorporated business tax is a franchise tax, however, our inquiry would not stop there. Franchise taxes can be considered property taxes, excise taxes, gross income taxes, and most importantly income taxes,[13] depending on the incidents of taxation. While thirty-one states and this jurisdiction levy a franchise tax, [1958 All States] State Tax Cas. Rep. (C.C.H.) ¶ 700, some levy that tax on an annual basis, some on an initial basis; some measure the tax on the basis of gross income, some on the basis of net income; some merely assess a flat fee. Therefore, Pennsylvania's tax on the capital stock of domestic corporations was termed a property tax. *Commonwealth v. Standard Oil Co.*, 101 Pa. 119 (1882). In similar fashion, the Supreme Court of Minnesota has held that its franchise tax is an ad valorem property tax, the value of the property being measured by the net income of the corporation. *The Pullman Co. v. Commissioner*, 223 Minn. 96, 25 N.W.2d 838 (1947). In *Republic Acceptance Corporation v. DeLand*, 275 F. 632 (E.D.Mich.1921), the United States District Court held that Michigan's franchise tax was in actuality an excise tax. Other jurisdictions have likewise styled their tax a franchise tax only to have the courts intercede to reclassify the tax. *See, e. g., Gaulden v. Kirk*, 47 So.2d 567 (Fla.1950) (privilege tax was an excise tax); *State ex rel. McKay v. Keller*, 140 Fla. 346, 191 So. 542 (1939) (license tax was an income tax); *Commissioners of Sinking Fund v. Howard*, 248 S.W.2d 340 (Ky.1952), *aff'd*, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953) (occu-

pational license tax was an income tax); *City of Louisville v. Sebree*, 308 Ky. 420, 214 S.W.2d 248 (1948) (license fee was an occupation tax); *Carter Carburetor Corp. v. City of St. Louis*, 356 Mo. 646, 203 S.W.2d 438 (1947) (earnings tax was an income or an excise tax).

■ The impact of this judicial reclassification is most telling when viewed in terms of the gross receipts/net income distinction. A tax on gross receipts is not the same as a tax on net income. The former contemplates an annual levy on the total receipts of the taxpayer, regardless of the cost of attaining those receipts. *Cf. Northwestern Lumber Co. v. Wisconsin Tax Commissioner*, 202 Wis. 372, 231 N.W. 865 (1930) (income taxes are assessed on actual profit or loss); *People ex rel. Klauber v. Wendell*, 196 App.Div. 827, 188 N.Y.S. 301, *aff'd*, 232 N.Y. 549, 134 N.E. 567 (1921) (income tax on gains from sale or disposition, levied only if there is an actual gain or profit). The latter denotes gross income less certain deductions. *Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 38 S.Ct. 467, 62 L.Ed. 1054 (1918); *People ex rel. Standard Oil Co. of New York v. Law*, 237 N.Y. 142, 142 N.E. 446 (1923). *But see James v. United Artist Corp.*, 305 U.S. 410, 59 S.Ct. 272, 83 L.Ed. 256 (1939) (gross income tax levied on income less deductions allowed by statute).

The distinction between a tax on gross receipts and one on net income is important. When a jurisdiction taxes net income, it does so, in effect, because its object is to raise revenue by taxing the consumable wealth of its taxpayers. *See generally* Andrews, *Personal Deductions in an Ideal Income Tax*, 86 Harv.L.Rev. 309 (1967), discussed in Comment, *Tax Policies in Relation to Nonbusiness Legal Expenses and Prepaid Legal Services*, 26 Am.U.L.Rev. 451, 491–93 & n. 236 (1977) [hereinafter cited as *Tax Policies*]. Moreover, it seeks to serve auxiliary purposes such as redistribution of

---

**12.** This is particularly true when it is apparent that the tax at issue cannot be so designated consistently with the meaning and effect of the Act. *See Flint v. Stone Tracy Co.*, 220 U.S. 107, 145, 31 S.Ct. 342, 55 L.Ed. 389 (1910).

**13.** *See* the discussion of the distinction between gross income taxes and (net) income taxes, *infra*.

wealth, equalization of consumption, and taxation of the ability to pay. *E. g., Tax Policies, supra* at 491–93. One thing is clear, a net income tax seeks to tax only disposable income. *See, e. g., id.* at 486; I.R.C. §§ 162(a), 212.

A tax on gross receipts offers a very different result. Since a gross receipts tax can be collected even if the taxpayer has no funds remaining, after legitimate expenses, with which to pay the tax, the tax cannot be one on personal wealth. Rather a gross receipts tax is levied for the purpose of either taxing a privilege, such as the right to do business,[14] or simply raising revenue, as in the case of the sales tax.

The Court of Appeals of Maryland called the District of Columbia Unincorporated Business Tax a franchise tax. *Gardella v. Comptroller of Maryland, supra.* Virginia calls it an income tax. *Groom v. Forst, supra.* New York treats both its franchise [15] and its unincorporated business tax as income taxes. *People ex rel. Froelick v. Graves,* 259 App.Div. 30, 18 N.Y.S.2d 418 (1940) (unincorporated business tax); *People ex rel. Alpha Portland Cement Co. v. Knapp,* 230 N.Y. 48, 129 N.E. 202 (1920) (franchise tax). Consonant with the analysis presented above, we agree with New York and Virginia.

■ The court in *Gardella* relied heavily on the decision in *Keasbey & Mattison Co. v. Rothensies,* 133 F.2d 894 (3d Cir.), *cert. denied,* 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed. 438 (1943). In a much quoted passage, the court there stated:

> The Supreme Court, without advancing any precise definition of the term "in-

come tax," has unmistakably determined that taxes imposed on subjects other than income, e. g., franchises, privileges, etc., are not income taxes, although measured on the basis of income. [*Id.* at 897].

We can, and do, agree with that language and still hold that the D.C. unincorporated business tax is an income tax. The court in *Keasbey* noted the same distinction that we note here: a tax on gross receipts is not an income tax; a tax on net income is so, regardless of its nomenclature. *Id.* at 898.[16]

The professional tax, by its very terms, is a tax on net income. D.C. Code 1973, § 47–1574a defines taxable income, for purposes of the tax on unincorporated businesses, as "the amount of *net income* derived from sources within the District . . . in excess of the exemption granted by section 47–1574c (emphasis added)." Net income is defined in D.C. Code 1973 and 1978 Supp., §§ 47–1557 to –1557b. *Cf.* D.C. Code 1978 Supp., § 47–1557b(b)(5) (disallowing the deductions allowed in subsection (a) for individuals who share in the net income of an unincorporated business and who have used those deductions in determining the net income of the unincorporated business).

Appellee would have us hold that this tax is a tax on the right to earn income in the District, measured by the amount of income earned, and nothing more. That argument would be persuasive if the incident of this tax were the right to do business. Were such the case, the tax would be levied upon any act of earning income, regardless of any other consideration. Since a nonresident could earn substantial income within the District, but because of business expenses, medical expenses, interest pay-

**14.** In this respect, a gross receipts tax is similar to an annual graduated license fee based on the amount of business done as measured by gross receipts.

**15.** The District of Columbia corporate franchise tax implicitly has been treated, by this court, as an income tax. *See Jantzen, Inc. v. District of Columbia,* D.C.App., 395 A.2d 29, 31 (1978).

**16.** The court implicitly drew this distinction. In holding that the tax contained in the Quebec Mining Act was not an income tax, the court noted:

> It is significant that the allowable deductions are restricted to the costs actually incurred in the mining operation and nothing more. The expenses incident to the general conduct of the business, as distinguished from the costs incurred in the mining operation, are not deductible. [*Keasbey & Mattison Co. v. Rothensies, supra* at 898.]

The restricted nature of the allowable deductions demonstrated Quebec's desire to tax the output of the mines and not the wealth of the corporation.

ments, and the like, pay very little tax,[17] it cannot be said that the tax falls solely on the right to earn income within the District.

Appellants cite a long line of cases and revenue rulings in support of their position that the tax is an income tax. *E. g., Commissioner v. American Metal Co., supra; New York & Honduras Rosario Mining Co. v. Commissioner, supra;* Rev.Rul. 435, 1974–2 C.B. 204; Rev.Rul. 588, 1973–2 C.B. 268. In addition, they highlight the historical aspects of the tax for the proposition that it was intended to tax personal income. While we find the former argument more persuasive than the latter, the result is, nonetheless, that this tax is levied upon net income.[18]

The tax is levied upon personal income. If we dealt here with a corporate franchise tax, the result would be different. To the extent that we deal with individuals who are professionals and are not protected by the corporate veil, we must find that the tax burdens the taxpayer personally.

We do not by this opinion mean to imply that the District of Columbia cannot tax nonresident professionals who operate an unincorporated business. We say only that the District of Columbia cannot tax the net personal income of nonresidents.[19]

For the above reasons, we conclude that the professional tax here at issue is an invalid exercise of the City Council's legislative authority under the Home Rule Act.[20] Accordingly, the judgments on appeal in Nos. 12871 and 12920 are reversed and the appeals in Nos. 12872 and 12921 are dismissed.

*So ordered.*

Before: Newman, Chief Judge; Kelly, Kern, Gallagher, Nebeker, Harris, Mack, and Ferren, Associate Judges; and Pair, Associate Judge, Retired.

## ORDER

PER CURIAM.

On consideration of the petition of the District of Columbia for rehearing en banc or, in the alternative, for rehearing by the division, and it appearing that a majority of the judges of this Court has voted to grant the en banc petition, it is

---

17. The minimum tax payable is $25. Appellee urges that to the extent some tax is payable even if no profits are earned, the tax has the attributes of a franchise tax. While we agree that a flat fee would not violate the Home Rule Act, we cannot agree that the single provision for a minimum payment can sustain this tax. By design and in practice, the tax vests on net income; in only exceptional circumstances would the tax liability be assessed by any other measure.

18. The scheme of the tax further demonstrates its nature as a personal net income tax. In order to determine taxable income, the taxpayer first must determine the gross income of the unincorporated business. From that amount, the taxpayer may exclude items designated as excludable in D.C. Code 1973 & 1978 Supp., § 47–1557a, and deduct amounts allowable under D.C. Code 1973 & 1978 Supp., § 47–1557b, with the exception of the reasonable wages deduction found in D.C. Code 1978 Supp., § 47–1557b(a)(15). The taxpayer then takes his wages paid deduction, which cannot be greater than 70% of net income computed without this deduction. *Id.* Since the tax is on unincorporated businesses, and is therefore in reality a tax on the associates or partners who run the business, D.C. Code 1973, § 47–1574d, *see* discussion *infra*, the computation of wages paid is usually artificial. The figure thus derived is called net income. Taxable income is ascertained by reducing net income by a set exemption of $2,500 for a personal service organization (as defined by the code) or $5,000 for all other unincorporated businesses. D.C. Code 1978 Supp., § 47–1574c. The tax liability is determined by taking a set percentage of taxable income; to wit, 12% for 1975 and 9% thereafter. The minimum tax liability is $25. D.C. Code 1978 Supp., § 47–1574b; *see* note 15 *supra.* The individuals who conduct the unincorporated business are jointly and severally liable for the tax. D.C. Code 1973, § 47–1574d.

19. A number of the aspects of the current tax could be retained and pass our scrutiny. The $25 minimum tax certainly does not suggest a tax on net income. The same may be true for certain deductions as long as they merely serve to adjust the tax base, reflect the true incident of taxation, and facilitate the tax. *Keasbey & Mattison v. Rothensies, supra,* at 898.

20. In view of this disposition of the case, we need not discuss the other issues raised by Bishop and Kleiboemer on appeal or those raised by the District on cross-appeal.

ORDERED for the merits division that the petition for rehearing by the division be denied; and it is

Further ORDERED that the en banc petition be granted and the opinion and judgment heretofore filed on April 20, 1979, are vacated. The Clerk shall cause this case to be rescheduled before the Court sitting en banc on such future date as the business of the Court permits.

Counsel for the parties shall furnish the Clerk with seven additional copies of the briefs heretofore filed and, if they desire to file supplemental briefs (10 copies), shall within 10 days from the date of this order submit to the Clerk a proposed briefing schedule.