Richard A. BISHOP, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Richard A. BISHOP, Appellee.

Axel-Felix H. KLEIBOEMER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Axel-Felix H. KLEIBOEMER, Appellee.

Nos. 12871, 12872, 12920 and 12921.

District of Columbia Court of Appeals.

Argued En Banc Oct. 15, 1979.

Decided Feb. 12, 1980.

As Modified Feb. 14, 1980.

Philip L. Kellogg, Washington, D. C., with whom James L. Lyons and Bradley G. McDonald, Washington, D. C., for Axel-Felix H. Kleiboemer.

Judith W. Rogers, Corp. Counsel, Washington, D. C., with whom Richard W. Barton, Deputy Corp. Counsel, Robert E. McCally, David P. Sutton, Richard L. Aguglia and James C. McKay, Jr., Asst. Corp. Counsel, Washington, D. C., were on the brief, for the District of Columbia.

John M. Bixler, Washington, D. C., with whom Ronald D. Aucutt, Washington, D. C., was on the brief, for Richard A. Bishop.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

The arguments advanced by the government in the en banc rehearing of this case do not persuade this court to disturb the

division's holding in *Bishop v. District of Columbia*, D.C.App., 401 A.2d 955 (1979), that Section 605 of the Revenue Act of 1975[1] was an impermissible exercise of the District of Columbia Council's authority under § 602(a)(5) of the Home Rule Act.[2]

Section 605 of the Revenue Act of 1975 repealed the professional exemption to D.C. Code 1973, § 47–1574 (the unincorporated business tax provision) and thereby imposed a tax on nonresident unincorporated professionals and personal service businesses. The division concluded that this repeal circumvented the intention of Congress, as stated in the Home Rule Act, that: "The Council shall have no authority . . . to (5) impose any tax on the whole or any portion of the personal income . . . of any individual not a resident of the District . . . ." D.C.Code 1978 Supp., § 1–147(a)(5). The division thus held that the resulting tax on unincorporated professionals was not a franchise or gross receipts tax but, rather a tax levied upon the personal income of "individuals who are professionals and are not protected by the corporate veil . . . ." *Supra* at 961.

We here underscore the division opinion's holding with several instructive comments from the legislative history of the Home Rule Act that were drawn to our attention on rehearing en banc; we also emphasize the limits of that holding.

During the Senate hearings on the Home Rule Act, in response to the query whether "the [Senate] Committee [on the District of Columbia] has eliminated anything in regard to a commuter tax," the Committee Chairman, Senator Thomas Eagleton, responded, "Yes. There is a *specific prohibition* as to the imposition of a *commuter tax, a reciprocal income tax, or any other tax on nonresidents* of the District of Columbia." 117 Cong.Rec. 42498 (1971) (emphasis added).

Senator Charles Mathias elucidated the rationale for enacting the prohibition found in § 602(a)(5) of the Act: "The increased Federal payment [to the District] also compensates for the Congress' refusal to permit the District to levy taxes on the income of nonresidents." *Id.* at 42502.

Senator Eagleton clearly distinguished the permissible franchise tax from the impermissible commuter tax in the October 12, 1971, debates on S. 2652:

> For example . . . of utmost significance . . . the present mayor-commissioner and council have jurisdiction over taxes—to wit, the real property tax. They can raise it or lower it. As to all other taxes, including franchise taxes, sales taxes, local taxes, that jurisdiction is in Congress. We transfer the jurisdiction of taxation to the elected city council and to the elected mayor—*holding back*, as I said before, *the commuter tax*. [117 Cong.Rec., *supra* at 35747; (emphasis added).]

The remarks of Representative Breckenridge of Kentucky, are particularly revealing on the question of congressional intent: "I am concerned about the phrase, 'personal income tax.' I take it what we are driving at here is precluding any tax which is based on a percentage of income regardless of whether it is technically considered personal income . . . ." Congressman Gude of Maryland (the House of Representatives proponent of the amendment enacted as § 602(a)(5)) answered: "The thrust of this amendment, the interpretation would be that that would be included under this amendment. That was the intent when the amendment was offered in the Senate." Background and Legislative History of H.R. 9056, H.R. 9682 and Related Bills Culminating in The District of Columbia Self-Government and Governmental Reorganization Act, ch. II (Dec. 31, 1974) 1126. H.R. Rep. No. 83–92, 92d Cong., 1st Sess. (1971).

---

1. The Revenue Act was enacted on October 21, 1975, as D.C.Law No. 1–23.

2. District of Columbia Self-Government and *Governmental Reorganization Act, Pub.L. No.* 93–198, 87 Stat. 774 (1973) (codified at D.C. Code 1978 Supp., §§ 1–121 to –171r).

The government cites *Palmore v. United States*, 411 U.S. 389, 395, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) for the proposition that we must presume Congress "legislated with care" when it enacted § 602(a), arguing that "had [Congress] intended to prohibit the Home Rule Government from taking the action in question, it would have said so expressly, and not left the matter to mere implication." District of Columbia Petition for Rehearing En Banc at 7. We agree, and reiterate our conclusion that Congress expressly and specifically withheld the District of Columbia Council's authority to impose a tax on the income of nonresidents. By enacting § 605 of the Revenue Act of 1975, which repealed the professional exemption contained in § 47–1574, the Council circumvented this express congressional prohibition. Section 605 is therefore invalid.

The government also contends that the division opinion "places other existing and proposed taxing measures of the District Government under a cloud." District of Columbia Petition for Rehearing En Banc at 2. This contention betrays a misunderstanding of our judicial role. We did not, and as a nonlegislative body could not, intend to instruct the District of Columbia Council as to the relative propriety of alternative schemes for raising tax revenues. We are limited to deciding the case before us. The division's discussion of a gross receipts tax, *Bishop v. District of Columbia, supra* at 966 *et seq.,* was employed as an illustrative device, to contrast the features of a gross receipts tax with those of a net income tax. This discussion, therefore, should not be read to either prescribe or proscribe the District of Columbia Council's adoption or continued imposition of a gross receipts tax, or of any taxing measure other than the one before the division at that time.

The division opinion, vacated June 11, 1979, is hereby reinstated and, with this elaboration, constitutes the en banc opinion of the court.

*So ordered.*

MACK, Associate Judge, dissenting:

I agree with the majority that the District of Columbia cannot levy a tax upon the personal income of nonresidents. The majority apparently agrees with me that the District of Columbia *can* levy a tax upon nonresident professionals who operate an unincorporated business in the city. Having agreed to this extent, we disagree. In my opinion the majority's rationale evidences a common, and understandable, failing of those of us whose lives have been shaped in this federal city; in its preoccupation with what the City Council cannot do, it has lost sight of what the Council did, and what Congress, which has not been reluctant to say what the Council can or cannot do, has chosen not to countermand.

The prohibition of § 602(a)(5) of the Home Rule Act [1] is clear enough; Congress proscribed the imposition of "any tax on the whole or any portion of the personal income, either directly or at the source . . . of any individual not a resident of the District." D.C.Code 1978 Supp., § 1–147(a)(5). But this provision, and its legislative history, relied upon by both sides in this litigation, address but one aspect of the total picture. We must look to the challenged action of the Council—here the amendment to Title VIII of the 1947 Revenue Act, a provision specifically addressed to "Tax on Unincorporated Businesses." Pub.L. No. 80–195, 61 Stat. 345 (codified at D.C.Code 1973, § 47–1574). As the division opinion adopted by the majority en banc points out (*Bishop v. District of Columbia,* D.C.App., 401 A.2d 955, 957 (1979)), the purpose of this title was to " 'impose a tax upon all business income which would be subject to the corporation franchise tax, if incorporated, regardless of whether the business is carried on by an individual, by a partnership, or by some other unincorporated entity.' " *Id.* at 957, *quoting* 16 DCRR § 307 p. 122.

1. District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774 (1973) (codified at D.C. Code 1978 Supp., §§ 1–121 to 1–171r).

What the City Council did in enacting § 605 of the Revenue Act of 1975,[2] was to delete the last sentence from this business tax provision which had heretofore exempted certain professional and personal services entities from its coverage.[3] The issue here cannot be assessed without resort to a closer look at the scheme of the taxing statute in question, which for close to thirty years has been applied to residents and nonresidents alike.

1. The provisions of Title VIII of the 1947 Act are explored in an early decision of this jurisdiction, *District of Columbia v. Pickford*, 86 U.S.App.D.C. 17, 179 F.2d 271 (1949). The rationale of that decision is instructive both as to the purpose of our unincorporated business tax and its character as a franchise tax *despite its levy on net income.* In holding that a nonresident owner of a hotel, who leased the hotel to another, was not engaged in an unincorporated business, the court said:

> Title VIII of the statute levies the tax for the privileges both of carrying on business and of receiving income from sources within the District. But the levy is upon the net income of an unincorporated business only. The privilege of receiving income from sources within the District, for which the statute imposes the tax, is, under this statute, a privilege being exercised by an unincorporated business. So, if there be no "business" within the meaning of the statute, there is no tax. [*Id.* at 18, 179 F.2d at 272.]

The court made crystal clear the difference that the statute makes between a tax levied on business income and a tax levied on the personal income of an individual, noting:

> It is striking that this act does not levy a tax upon nonresident individuals generally upon income from sources within the District, as the federal income tax law and the laws of many states do in respect to nonresidents of their respective jurisdictions. While Title VI [taxing income] is headed "Tax on Residents and Nonresidents", the tax levied by it is upon residents only, as that term is defined in the act. [*Id.*]

With respect to the general scheme of our statute in relation to nonresidents, the court added:

> The scheme of the statute seems to be that nonresidents be taxed only upon income of a "business", and that tax is to be effected by a franchise exaction. If this were not the scheme of the statute, we see no reason for the elaborate and precisely worded provisions to that effect and the omission of any general levy upon nonresidents. There is a broad definition of resident, but, outside the borders of that definition, nonresidents seem to be untaxed except by way of the franchise upon "unincorporated business". [*Id.* at 19, 179 F.2d at 273.]

If we accept the precedential impact of the *Pickford* decision (which it seems to me

---

2. D.C. Law No. 1–23, § 605 (codified at D.C. Code 1973, § 47–1574).

3. The tax provision read as follows:
Title VIII.—Tax on Unincorporated Businesses
§ 47–1574. Definition of unincorporated business.
For the purposes of this subchapter (not alone of this title) and unless otherwise required by the context, the words "unincorporated business" means any trade or business, conducted or engaged in by an individual, whether resident or nonresident, statutory or common-law trust, estate, partnership, or limited or special partnership, society, association, executor, administrator, receiver, trustee, liquidator, conservator, committee assignee, or by any other entity or fiduciary, other than a trade or business conducted or

engaged in by any corporation; and include any trade or business which if conducted or engaged in by a corporation would be taxable under sections 47–1571 and 47–1571a. *The words "unincorporated business" do not include any trade or business which by law, customs, or ethics cannot be incorporated, any trade, business, or profession which can be incorporated only under chapter 11 of title 29, or any trade or business in which more than 80 per centum of the gross income is derived from the personal services actually rendered by the individual or members of the partnership or other entity in the conducting or carrying on of any trade or business and in which capital is not a material income-producing factor.* [Emphasis supplied to identify deletion.]

that the Division, at least, was required to do)[4] three conclusions necessarily follow: 1) the tax to which appellants have been subjected by the Council's action is a franchise tax for the privilege of doing business in the District of Columbia, 2) it is properly imposed upon nonresidents, and 3) the fact that it is imposed upon net income does not make it a personal income tax. The issue then becomes, not one of whether the Home Rule Act prohibits the taxing of the personal income of nonresidents, but whether a nonresident engaging in professional practice in the District may be an unincorporated business for the purpose of the franchise tax. I suggest that there is no reason in law or logic for concluding that a professional doing business in the District is not a business entity subject to a franchise tax. It seems clear enough from the broadly worded definition of unincorporated business in § 47–1574, as well as the efforts of the Bar itself to maintain the exemption for professionals, that the exemption was granted by Congress purely as a matter of legislative grace. Moreover, in view of this court's careful disavowal of any intent to imply that the District of Columbia cannot impose an unincorporated business tax on nonresident professionals, that would seem to be the end of the matter.

2. If, however, the en banc majority is inclined to ignore the teaching of *Pickford* that § 47–1574 properly exacts a franchise from nonresidents based upon business net income, I suggest it is in no better position. I, like the majority, look to the method and effects of the tax computation; I do not find the incidents of a personal income tax.[5] Under the scheme, after normal business deductions are subtracted from gross business earnings, a salary allowance equal to 70% of the net income computed without this deduction, plus a $2,500 exemption, are permitted prior to imposition of the tax for calendar year 1975. (D.C.Code 1973, § 47–1557b(a)(15) and D.C.Code 1978 Supp., § 47–1574c.) [It is this salary allowance (or share thereof) plus the share of the exemption that a District of Columbia resident reports on his personal income tax return.] Under the tax scheme of § 47–1574, earnings or deductions that are not business related are not computed as part of the gross income or allowable expenses. The 70% salary allowance recognizes the legislative deletion of personal income in a reasonable amount from the imposition of the tax, leaving 30% of net residual business income less $2,500 as the measure of the taxable business income. Payment of the tax is a joint and/or several liability of the owners or managers. D.C.Code 1973, § 47–1574d. For example, one partner could be held liable for the entire business franchise tax, although that payment has no relation to his personal earnings. *Id.* Unlike a personal income tax, there is a minimum tax liability of $25. *Id.* § 47–1574b.

The majority's focus on the distinction between gross receipts and net income says very little in light of the purpose and scheme of § 47–1574. The object of the statute is not to tax the consumable wealth of nonresidents but to levy a tax for the privilege of doing business here. *See District of Columbia v. Pickford, supra.* In imposing such a tax, a legislature may employ either a net income approach or a gross receipts approach as a matter of administrative convenience.[6] Repeated holdings of the Supreme Court recognize that there is a

4. *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

5. As a result of the prior exemption of professionals from the obligation of paying a tax for the privilege of doing business in the District of Columbia, I fear that some have grown accustomed to treating the whole of the business net income as their personal income. The franchise tax must be viewed as another business expense which must be deducted from business income.

6. The New Jersey legislature, in imposing an unincorporated business tax, noted:

The Committee considered using a net income approach rather than gross receipts but concluded that such an approach would be entirely too cumbersome considering the low rates and yields involved. At the levels suggested, it did not appear that a gross receipts approach would be unduly burdensome. [*Foosaner v. Director, Division of Taxation,* 58 N.J. 57, 61, 275 A.2d 129, 131 (1971).]

distinction between an income tax and a franchise tax imposed on the privilege of doing business, even though the latter tax is measured with reference to net income. *See, e. g., Pacific Co., Ltd. v. Johnson*, 285 U.S. 480, 52 S.Ct. 424, 76 L.Ed. 893 (1932); *Educational Films Corp. v. Ward*, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931); *Home Insurance Co. v. New York*, 134 U.S. 594, 10 S.Ct. 593, 33 L.Ed. 1025 (1890).

Moreover, the rationale of the majority reasoning appears to be clouded by preoccupation with notions of franchise taxation as applied to corporations. Thus, it is said "[t]o the extent that we deal with individuals who are professionals and are not protected by the corporate veil, we must find that the tax burdens the taxpayer personally." *Bishop v. District of Columbia, supra* at 961. Following this reasoning, it does not appear to me exactly why a nonprofessional engaged in an unincorporated business, and likewise not protected by a corporate veil, would not be equally burdened. And therein, it seems to me lies the danger of the majority's holding; it makes the District of Columbia franchise statute vulnerable to attack by others on constitutional grounds.[7] It gives preferential treatment to nonresident professionals. Yet both professional and nonprofessional residents and nonresidents alike enjoy the privilege of incorporating a business. *See* District of Columbia Professional Corporation Act, Pub.L. No. 92–180, 85 Stat. 576 (codified at D.C.Code 1973, § 29–1101 *et seq.*). Similarly, all have the privilege of deriving income from sources within the District, while enjoying the use of District facilities and reaping the benefits of protective and environmental services. Certainly the minimum return in the way of a franchise exaction is not too much to ask. As the New Jersey Supreme Court has noted, in quoting from a legislative report with respect to an unincorporated business statute, and in

holding that lawyers were subject to the tax:[8]

This tax does not represent a major revenue source under the Committee's proposal. It could be eliminated easily through an adjustment of the rates from the other three tax sources. The Committee concluded, however, that such a tax was desirable because it would retain within the tax umbrella certain elements of the business community which would otherwise escape all or most business taxes. *This is particularly true of professional and service areas.* [*Foosaner v. Director, Division of Taxation*, 58 N.J. 57, 61, 275 A.2d 129, 131 (1971) (emphasis in original).]

3. Underlying all of this discussion is the indisputable fact that the Home Rule Act does not prohibit the Council from legislating with respect to a franchise tax. The reference to a "commuter" tax only triggers an emotional response and obscures the issue. The Corporation Counsel, in its supplemental brief on rehearing en banc, has meticulously set forth the specific proposals introduced in at least four sessions of Congress (90th, 91st, 92nd, 93rd) which in dealing with such measures as reciprocal income tax provisions, constitute the true reasons for commuter tax concerns at the time of the passage of Home Rule. In my view, these concerns have nothing to do with the privilege of conducting a business in the District of Columbia, as the reasoning of *Pickford* makes clear. I submit there is an appreciable difference between taxing the personal income of a federal (or district) employee or official, who comes from a neighboring jurisdiction into the city to work in a defined enclave at a fixed salary paid by the government, and the levying of a tax on a business owned and operated by a nonresident who derives a source of income from within the city itself.

7. I find it somewhat disingenuous for the taxpayers here to argue that nonresidents are denied equal protection by the Council's action because residents may receive tax credit when filing District of Columbia personal income tax returns. Obviously the District of Columbia

has no control over what tax credits neighboring jurisdictions extend to their residents.

8. *See also Shapiro v. New York*, 32 N.Y.2d 96, 296 N.E.2d 230, 343 N.Y.S.2d 323 (1973), holding that professionals are properly subjected to a business income tax.

4. Followed to its logical conclusion, what the court does today is to strike down the validity of the Council's action only as to nonresident professionals, since it is not questioned that resident professionals can be taxed even if it were true that "personal income" was involved. Not only does the court's action deprive the District of Columbia of revenue from the very persons who are the most likely candidates to pay for doing business in the city, contrary to all principles of taxation, but the decision also forecasts the beginning of what may be an administrative quagmire.

I would affirm the order of the trial court denying the taxpayers' petitions for refunds.