# Richmond

## H. J. LANGSTON, ET ALS. v. CITY OF DANVILLE, ET ALS.

June 20, 1949.

Record No. 3498.

Present, All the Justices.

The opinion states the case.

*A. M. Aiken* and *Garrett & Wheatley*, for the appellants.

*Rutledge C. Clement*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

H. J. Langston and others, constituting a group of professional and business men doing business in the city of Danville, filed their bill of complaint in the court below against the city of Danville and certain of its officials, praying for an injunction restraining the collection of license taxes for the year beginning January 1, 1948, to which the plaintiffs were subject under the terms of an ordinance enacted on December 30, 1947. It was contended that the ordinance was illegal and void in that, (1) it imposed a "tax or levy upon incomes" in contravention of section 35 of the Virginia Tax Code, and (2) the rates imposed were arbitrary, discriminatory, unreasonable and exorbitant.

From a decree sustaining a demurrer to and dismissing

the bill of complaint the present appeal has been allowed. The appellants attack the validity of the ordinance on the same grounds asserted in the court below.

The basic authority for the enactment of the ordinance is found in section 4, ch. 7, of the charter of the city of Danville (Acts 1889-90, ch. 262, p. 424), which is copied in the footnote.[1]

As a preamble the ordinance makes this "Statement of Policy:"

"It is the purpose and policy of the City of Danville, in enacting this ordinance imposing license taxes for the privilege of conducting business in the City, to equalize as far as practicable the burden of such license taxation among those hereby liable thereto, by adopting for general application, but subject to the exceptions hereinafter specifically set forth, a system of license taxes measured by the gross receipts of the business, trade, or occupation in respect of which the tax is levied."

The ordinance imposes a flat annual license tax on certain types of activities of a minor nature, and an annual license tax upon certain professions, businesses and occupations, measured by a percentage of the taxpayers' gross receipts for the preceding calendar year. The percentage is uniform as to each group, but varies according to the classifications. The highest rate is measured by 1% of the gross annual receipts of telephone and telegraph companies on their local business.

---

[1] "The council may impose a tax upon all corporations located in the city, or having their principal office therein, and not exempted by law from taxation. It may impose a tax on merchants, commission merchants, traders, lawyers, physicians, dentists, bankers, brokers, manufacturers, keepers of ordinaries, hotel keepers, boardinghouse keepers, keepers of drinking or eating houses, keepers of livery or sales stables, daguerrean or photographic artists of all kinds, and agents for the transaction of any taxable business; and the council may impose a tax upon any other business, trade, persons, or employment, whether such business, trade, person, or employment be herein specially enumerated or not, and whether any tax be imposed thereon by the state or not. As to all such business, trade, persons, or employment the council may lay a direct tax, or may require a license therefor, as may be most expedient and proper, under such regulations as it may prescribe, and levy a tax thereon."

The next highest rate is 95¢ for each $100 of the gross receipts from the occupation and is applicable to attorneys at law, physicians and other professional occupations, hotel operators and entertainment businesses. This rate applies to the occupations of several of the appellants.

The rates applicable to other occupations vary with the respective classifications, as shown in the footnote.[2] Several of the appellants come within the classification of contractors and others within that of retail merchants.

Section 35 of the Tax Code reads thus: *"Income not subject to local taxation.*—Incomes having been segregated for State taxation only, no county, city, town, or other political subdivision of this State shall impose any tax or levy upon incomes.".

■ That this type of ordinance does not impose a "tax or levy upon incomes," in contravention of this section of the Tax Code, is well settled. It imposes a license tax exacted for the privilege of conducting a business or practicing a profession, and such tax, although measured by the taxpayer's gross receipts, is not a tax on the income derived from such business or profession.

The precise question was involved in *Commonwealth* v. *Werth,* 116 Va. 604, 82 S. E. 695, Ann. Cas. 1916D, 1263. In that case the taxpayer, a member of the legal profession, contended that to require him to pay a State income tax and State license tax, the latter measured by his income, constituted double taxation. In disposing of this argument we said (116 Va., at pages 608-609):

"This contention loses sight of the distinction between a license and occupation tax exacted for the privilege of

---

[2]

| Amusements | 50c for each $100 of gross receipts |
| Contractors | 42c for each $100 of gross receipts |
| Repair service occupations | 34c for each $100 of gross receipts |
| Retail merchants | 34c for each $100 of gross receipts |
| Wholesale merchants | 27c for each $100 of gross receipts |
| Abattoirs | 27c for each $100 of gross receipts |
| Leaf tobacco dealers | 16c for each $100 of gross receipts |
| Manufacturers | 15c for each $100 of gross receipts |

engaging in or carrying on a particular vocation or business and a tax on the income derived from such vocation or business.

" 'License and occupation taxes, which are payable in respect to the privilege of engaging in or carrying on a particular business or vocation, are not income taxes, notwithstanding the fact that the amount of tax payable by an individual may be measured by the amount of business which he transacts or his earnings therefrom. And conversely, although a person's entire income may be derived from a particular pursuit or trade, a tax on the income as such is not a license or privilege tax. Thus, a tax on sales of a particular commodity, or a tax on the dealer measured by the amount of his sales, is not an income tax.' Black on Income Taxes, sec. 3, citing *Commonwealth* v. *Brown*, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110.

"So also, an ordinance of the city of Richmond, providing that lawyers and others should be divided into classes, and imposing a graduated tax on those in the several classes, was held not to be an income tax. *Ould* v. *Richmond*, 23 Gratt. (64 Va.) 464, 14 Am. Rep. 139; *Petersburg* v. *Cocke*, 94 Va. 244, 26 S. E. 576, 36 L. R. A. 432; *Postal Tel. Co.* v. *Norfolk*, 101 Va. 125, 43 S. E. 207."

See also, *Hunton* v. *Commonwealth*, 166 Va. 229, 244, 183 S. E. 873, 879; Cooley on Taxation, 4th Ed., Vol. 1, sec. 49, pp. 138, 139; 27 Am. Jur., Income Taxes, sec. 7, p. 311; 53 C. J. S., Licenses, sec. 3, p. 461. For the opposite view, see *State* v. *Keller*, 140 Fla. 346, 191 So. 542.

It is argued that the ordinance is fatally discriminatory in that it "arbitrarily taxes some classifications much more heavily than others without any logical reason or basis" therefor, and in that it "fails to classify or tax at all vast segments of the population," for example, certain "high-salaried citizens, such as cotton mill executives, members of the tobacco industry, newspaper editors, business managers, entrepreneurs and others too numerous to mention." Consequently, it is said, the ordinance denies to the appellants

the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution.

This argument has been repeatedly advanced and rejected by this and other courts in cases of this character. In *Caskey Baking Co.* v. *Commonwealth*, 176 Va. 170, 179, 10 S. E. (2d) 535, 540 (affirmed 313 U. S. 117, 61 S. Ct. 881, 85 L. Ed. 1223), we pointed out that: "Inequalities or exemptions in state taxation are not forbidden by the equal protection clause of the Fourteenth Amendment. That clause does not limit the power of the state to make any reasonable classification of property, occupations, persons or corporations, for purposes of taxation. It merely forbids inequality caused by clearly arbitrary action, particularly such as is attributable to hostile discrimination against particular persons or classes."

In affirming that judgment the Supreme Court of the United States said: "As we have repeatedly held, the equal protection clause of the Fourteenth Amendment does not prevent a state from classifying businesses for taxation or impose any iron rule of equality. Some occupations may be taxed though others are not. Some may be taxed at one rate, others at a different rate. Classification is not discrimination. It is enough that those in the same class are treated with equality." (313 U. S., at page 121, 61 S. Ct., at page 883.)

The exemption of salaried executives from the payment of appropriate license taxes is no doubt because of the fact that such taxes for the privilege of engaging in the particular businesses are paid by the employers of these executives. See *Derrick* v. *Commonwealth*, 122 Va. 906, 95 S. E. 392, L. R. A. 1918D, 281.

The contention that the ordinance is violative of section 168 of the Virginia Constitution, which requires that "all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," is sufficiently answered by our holding in *Bradley & Co.* v. *Richmond*, 110 Va. 521, 66 S. E. 872 (affirmed 227 U. S. 477, 33 S. Ct.

318, 57 L. Ed. 603). In that case we said that the provisions of this section "apply only to a direct tax on property, and not to license taxes, which do not admit of a tax strictly equal and uniform in the sense contended for." (110 Va., at page 525.) See also, *Commonwealth* v. *Whiting Oil Co.,* 167 Va. 73, 77, 187 S. E. 498, 500.

Much of the argument of the appellants is devoted to the contention that the rates of taxation applicable to certain of the classes within which they respectively fall are excessive, and for that reason so much of the ordinance as affects them is invalid. They allege in their bill that the rates are "unreasonable," "unfair," "exorbitant and well-nigh prohibitive," and that they are equivalent to a levy of from 3% to 19% of the net incomes derived from certain of the professions, occupations, or businesses practiced or carried on by them, the appellants. They argue in their brief that such rates are so excessive as to tend to discourage, if not to destroy, the useful professions and occupations in which these taxpayers are engaged.

The authorities are in accord that where, as here, a municipality, under a grant of authority from the legislature, imposes a license tax for revenue, the amount of the tax is ordinarily within the discretion of the taxing power and is not subject to judicial review. See 53 C. J. S., Licenses, sec. 19, p. 521; 33 Am. Jur., Licenses, sec. 46, p. 368; Cooley on Taxation, 4th Ed., Vol. 4, sec. 1714, p. 3430 *ff.*

Some courts go farther and hold that such legislative discretion in imposing a tax for revenue is not subject to judicial review, even though the tax imposed may be pro-hibitory or destructive of the business affected. See *Fox* v. *Standard Oil Co.,* 294 U. S. 87, 99, 100, 55 S. Ct. 333, 338, 79 L. Ed. 780, and cases there cited. This view finds support in *Bradley & Co.* v. *Richmond, supra* (110 Va., at page 525).

But the weight of authority, and particularly the later decisions, hold that the rule, that the reasonableness of a license fee imposed as a tax is a matter within the discretion of the taxing power and that the courts will not interfere therewith, is subject to the limitation that the tax must not

amount to a prohibition of a useful or legitimate occupation. Cooley on Taxation, 4th Ed., Vol. 4, sec. 1714, pp. 3430-3433; 53 C. J. S., Licenses; sec. 19, p. 516 *ff.*

In the recent case of *Williams* v. *Richmond*, 177 Va. 477, 14 S. E. (2d) 287, 134 A. L. R. 833, we applied the majority rule and held that a license fee of $50 was invalid, for the reason, along with others, that it would be destructive of "certain modest callings" to which it was applicable. (177 Va., at p. 491, 14 S. E. (2d) at p. 292.)

In reaching this conclusion we quoted with approval the following statement from 37 C. J., Licenses, sec. 42 (53 C. J. S., Licenses, sec. 19, p. 520): "In accordance with general rules as to prohibitory legislation, in regard to licenses, if a license fee or tax is so high as to be virtually confiscatory or prohibitive of a useful and legitimate occupation or privilege, or to create a monopoly for the benefit of a few, the act or ordinance imposing it is invalid; and this rule applies where the tax is imposed for revenue." (177 Va., at pp. 490, 491, 14 S. E. (2d), at p. 292.)

These further principles apply: Whether a particular license fee or tax is prohibitive or confiscatory depends on its general operation in the class to which it applies, and not on its effect in an isolated case. Cooley on Taxation, 4th Ed., Vol. 4, sec. 1714, pp. 3433-3434; 53 C. J. S., Licenses, sec. 19, p. 523.

Every presumption is in favor of the reasonableness and validity of the ordinance, and the burden of proving the tax to be prohibitive or confiscatory is upon the party attacking it. Cooley on Taxation, 4th Ed., Vol. 4, sec. 1714, p. 3433.

██ Tested by these principles the appellants' bill does not, in our opinion, show that the license taxes of which they complain are prohibitive or destructive of their respective professions or occupations, or any of them. The allegation that the rates are "exorbitant and well-nigh prohibitive" is the pleaders' conclusion, the truth of which is not admitted on a demurrer.

We have been cited to no case, nor have we been able

to find any, which holds that an annual license tax measured by 1% of the annual gross receipts of the taxpayer is excessive or exorbitant. It is difficult to see how such a tax could be confiscatory or prohibitory of the professions or occupations to which it applies.

The highest rate applicable to any of the appellants is 95¢ per $100 of his annual gross receipts. Under this schedule a physician or lawyer, with an annual gross income of $15,000, is required to pay an annual license fee of $142.50. On an annual gross income of $10,000, the license fee is $95. Should the annual gross income drop to $3,000, the required license fee is $28.50.

Even if we accept as true on the demurrer the allegation in the bill that the tax is equivalent to a levy of from 3% to 19% of the net incomes of the respective appellants, this does not demonstrate that the tax is prohibitive. It is a matter of common knowledge that many professions and occupations have during the period covered by this ordinance survived and even prospered under heavier income tax burdens than these.

In the final analysis, the allegations of the bill amount to nothing more than an argument that the tax rate is too high and should be reduced. As has been pointed out, such an appeal should be addressed to the legislative body which imposed the tax and not to the courts.

The decree is

*Affirmed.*