## Staunton

COMMONWEALTH OF VIRGINIA, EX REL., ETC. v. SHELL OIL COMPANY.

September 5, 1969.

Record Nos. 6985 and 6986.

*D. Gardiner Tyler, Assistant Attorney General; A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for plaintiff in error in Record Nos. 6985 and 6986.

*Joseph C. Carter, Jr. (H. Brice Graves; Lee F. Davis, Jr.; Hunton, Williams, Gay, Powell & Gibson,* on brief), for defendant in error in Record Nos. 6985 and 6986.

SNEAD, J., delivered the opinion of the court.

Under the provisions of Code, §§ 58-1130, 58-1131 and 58-1134 Shell Oil Company, appellee, filed on August 31, 1961, in the Circuit Court of the City of Richmond a petition for the refund of taxes amounting to the sum of $41,695.96 allegedly erroneously collected from it by the Commonwealth of Virginia on the sale within this State of "Shell 640 Kerosene", a jet fuel, to Capital Airlines, Incorporated (later merged into United Airlines). (Record No. 6985.) Thereafter, Shell filed a similar petition seeking a recovery of $37,494.72 for taxes it paid to the Commonwealth on "Shell 640 Kerosene" sold Piedmont Aviation, Incorporated. (Record No. 6986.) The two cases presented

the same issues and the trial court heard them together without the intervention of a jury. By orders entered November 30, 1967, Shell was awarded a judgment against the Commonwealth for $34,835.68 in Record No. 6985 and a judgment for $37,032.96 in Record No. 6986. To these judgments we granted the Commonwealth writs of error.

The Commonwealth has assigned eight errors which are identical in each case. Among those assigned are that the trial court erred in assuming jurisdiction of the cases under Code, § 58-1130 and in finding that the fuel was not taxable.

The record discloses that Shell is a refiner and producer of motor fuel and petroleum products and is a duly licensed dealer therein in Virginia. In April, 1955 Shell wrote to the Division of Motor Vehicles inquiring as to the applicability of the tax on motor fuels to Shell's sales of kerosene for use in jet aircraft. A reply was received from the Commissioner of the Division of Motor Vehicles informing Shell that all sales of aviation fuel would be subject to a tax of six cents per gallon and should be reported in the regular monthly tax report. Shell proceeded to collect the tax and file its reports in accordance with this advice. The taxes sought to be recovered involved sales between January 1, 1956 and March 30, 1960.

Shell contended below, and the court found, that "Shell 640 Kerosene" was not subject to the tax on motor fuel imposed by § 58-711, *infra*, since that product did not come within the definition of motor fuel set out in § 58-687. Sub-section (3) of that statute defines aviation fuel as "a motor fuel designed for use in the operation of aircraft, and sold or used for that purpose". Sub-section (2) defined motor fuel as "all products commonly or commercially known or sold as gasoline * * * and [a]ny liquid prepared, advertised, offered for sale or sold for use as or commonly and commercially used as a fuel in internal combustion engines" which falls within certain distillation limits.[1] It is stipulated that "Shell 640 Kerosene" does not fall within the limits set out in this provision.

There is no common law remedy by which to obtain a refund of taxes and Shell elected to proceed under § 58-1130, which reads in part:

"Any person, firm or corporation assessed with any State taxes on property or income or any State license tax, or any State capitation

---

[1] The 1962 General Assembly rewrote sub-section (2) of § 58-687 and eliminated any reference to distillation tests.

tax, aggrieved by any such assessment * * * may * * * apply for relief to the court * * *."

It is Shell's position that the tax paid was a "State license tax" under this section and that the court properly assumed jurisdiction of the cases. Shell concedes that a finding that the tax was a license tax was essential to the court's jurisdiction, and that "[t]he court below had jurisdiction only if the motor fuel tax is a 'license tax' as that term is used in § 58-1130".

Section 58-711, as it applied to these cases, read in part:

"There is hereby levied a tax of six cents per gallon on all motor fuel which is sold and delivered or used in this State, * * * provided, that the tax herein imposed and assessed shall be collected by and paid to the State but once in respect to any motor fuel." [2]

The Commonwealth argues that the tax is an excise and not a license tax and relies heavily on *Shanks v. Kentucky Independent Oil Co.*, 225 Ky. 303, 8 S.W.2d 383. The court in that case recognized that "excise", in a broad sense, may include license taxes: "A license tax or tax for the privilege of doing business is sometimes referred to as an excise, as are all forms of taxation which are not burdens laid directly upon persons or property." 225 Ky. 307, 8 S.W.2d 385. See also 103 A.L.R. pp. 18, 19. The court held however that the three cents per gallon tax imposed by the Kentucky statute was not a license tax but was "an excise in the original and limited sense, being 'something cut off from the price paid on a sale of goods, as a contribution to the support of government' ". Thus the court noted that "excise tax" and "license tax" are not mutually exclusive terms but held, in that case, that the excise was levied only in its limited sense and not as a license tax.

The tax imposed by § 58-711 takes the form of an excise tax and is expressly referred to as such in § 58-710. [3] The question for determination then is not whether it is an excise or license tax, but whether, as an excise, it is imposed as a license tax.

In support of its position Shell cites *State* v. *Silver Bow Refining*

(2) Sec. 58-711 was amended in 1960 to increase the tax from six to seven cents per gallon.

(3) § 58-710, dealing with surrender of bond upon cancellation of license provides in part: "In the event that the license of any dealer shall be cancelled by the Commissioner as provided in the preceding section [§ 58-709] and in the further event that the dealer shall have paid to the State all *excise taxes* due and payable by it * * * upon the *receipt, sale or use of motor fuel* * * * then the Commissioner shall cancel and surrender the bond theretofore filed by such dealer." [Emphasis added.]

*Co.*, 78 Mont. 1, 252 P. 301; *Carson City* v. *Red Arrow Garage*, 47 Nev. 473, 225 P. 487; *Amos* v. *Gunn*, 84 Fla. 285, 94 So. 615; *Pauley* v. *California*, 75 F.2d 120; *Roberts* v. *Baton Rouge*, 236 La. 521, 108 So.2d 111. In our view these cases are not squarely in point. "The declaration in a statute that the tax is of a particular nature, while not conclusive, is very important and must be given consideration in construing the statute". 103 A.L.R. p. 19. As the Commonwealth points out, the statutes relied upon by the courts in these cases describe or refer to the taxes as license taxes. Chapter 13, Title 58 contains no such language with regard to the tax imposed by § 58-711. Section 58-710 refers to it only as an excise.

The trial court, in its opinion, states that the tax "is collected from a dealer in the form of a tax for the privilege of engaging in the particular business of distributing aviation fuel" and is therefore, as is argued by Shell, a license tax. In *Shanks, supra,* the court stated: "A careful reading of the act convinces us that the tax imposed was not intended as a license tax or a tax for the privileges of engaging in the business of selling gasoline in this state. It applies not only to sellers of gasoline but to users where the gasoline has not been sold in this state. On the other hand it does not apply to all sellers but only to the first seller as it provides that the article can be excised but once." Section 58-711 expressly provides that the tax is to be collected but once. Thus once the tax has been paid, no person who thereafter sells, delivers, or uses that motor fuel is subject to the tax; in other words he may, without payment of the tax, exercise the privilege of selling, delivering or using.

Further, even if it be assumed that § 58-711 imposes what amounts to a "privilege tax" this term is not always synonymous with "license tax". *Shulick-Taylor Co.* v. *City of Wheeling*, 130 W. Va. 224, 43 S.E.2d 54. "License" has been generally defined as conferring a right to do something which otherwise one would not have the right to do; it is a prerequisite to the right to carry on a business or do certain acts. 33 Am. Jur., Licenses, p. 325, and cases there cited. Compliance with the terms of § 58-711 confers no rights nor is it a condition precedent to lawful sale, delivery, or use. In *Ramaley* v. *City of St. Paul*, 226 Minn. 406, 33 N.W.2d 19, the court made a distinction between a tax on the transaction of business and a tax for the right to transact business. Referring to the former as an occupation tax the court concluded that it is exacted because business is being transacted regardless of whether it is being lawfully conducted, whereas a license tax is a

fee exacted as a prerequisite to the right or privilege to carry on the business. By its terms § 58-711 falls equally on those licensed persons with a right to engage in the business as on those unlicensed persons engaging in the business with no right.

Section 58-693 makes it unlawful for any dealer or jobber to "receive, use, sell or distribute any motor fuel" without a license, and § 58-694 requires that a filing fee of Five Dollars be paid to the Commissioner upon the filing of an application for a license. Section 58-695 requires that a bond also be filed with the application insuring the Commonwealth, among other things, the payment of motor fuel taxes which may be levied or imposed.

Shell argues that the tax imposed by § 58-711 is a license tax since continued enjoyment of a licensed status is contingent, under § 58-709, on its payment. That section provides in part: "If a dealer shall at any time file a false monthly report * * * or fail, refuse or neglect to file the monthly report required by this chapter or to pay the full amount of the tax as required by this chapter * * * the Commissioner *may* forthwith cancel the license of such dealer * * *." [Emphasis added.] It is clear under this section that enjoyment of a license is not absolutely contingent on payment of the tax, cancellation is within the discretion of the Commissioner. Further we construe this provision as imposing a possible penalty rather than a condition, as an additional means of insuring payment and compliance with other provisions of Chapter 13 of Title 58.

For the reasons stated we conclude that the tax imposed by § 58-711 is not a State license tax within the meaning of § 58-1130. That being the case, it follows that the trial court was without jurisdiction under § 58-1130 to entertain Shell's petitions for a refund of the tax allegedly erroneously paid.

In view of this conclusion it becomes unnecessary to discuss the other assignments of error.

The judgments appealed from are reversed and final judgments are here entered for the Commonwealth.

*Reversed and final judgments.*