## LLEWELLYN KING

### V.

## W.H. FORST, STATE TAX COMMISSIONER

Record No. 890562

April 20, 1990

Present: All the Justices

*Stephen Leventhal (Robert J. Zweibel; Martin R. Mann*, on briefs), for appellant.

*James G. Council, Assistant Attorney General (Mary Sue Terry, Attorney General; Walter A. McFarlane, Deputy Attorney General; Barbara M. Rose, Senior Assistant Attorney General; Marion S. Cooper, Assistant Attorney General*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

The dispositive question in this appeal is whether the District of Columbia's tax on the net income of unincorporated businesses, D.C. Code Ann. § 47-1808.1, *et seq.* (1981), (the UB tax) is an income tax or a franchise tax. If it is an income tax, a Virginia resident, who does business in the District of Columbia and pays the tax there, is entitled to credit against his Virginia income taxes for the amount paid to the District of Columbia. Va. Code § 58.1-332 (formerly Code § 58-151.015). If we decide, instead, that the District of Columbia's UB tax is a franchise tax, a Virginia taxpayer is not entitled to the credit provided by Code § 58.1-332.

The facts are undisputed. Llewellyn King, a resident of Virginia, operates an unincorporated printing business in the District of Columbia as a sole proprietor. For the 1983 tax year, Mr. King was assessed $19,211 in District of Columbia UB taxes. After paying the taxes, he claimed a credit against his 1983 Virginia

individual income tax, under then Code § 58-151.015, for the amount paid to the District of Columbia.

The State Tax Commissioner ruled that the UB tax was a franchise tax, not an income tax, and disallowed the credit. Mr. King paid his Virginia taxes under protest and filed this action in the court below against the State Tax Commissioner, contending that the UB tax was an income tax and seeking judgment for the credit allowed in such cases by Virginia law. The trial court entered summary judgment in the Commissioner's favor, ruling that the UB tax was a franchise tax. We awarded the taxpayer an appeal.

There is no dispute with respect to the Virginia law; the parties agree that under our statute, the trial court's decision is correct if the UB tax is a franchise tax, but must be reversed if the UB tax is an income tax. We are concerned, therefore, solely with the interpretation to be given to a District of Columbia statute.

The District of Columbia has a structure of taxation that includes an income tax on resident individuals, D.C. Code Ann. § 47-1806.3, an income tax on corporations, § 47-1807.2, an income tax on estates and trusts, § 47-1809.1, and the UB tax in question here, § 47-1808.1, *et seq.* All those statutes were originally enacted by Congress, when it was the District's sole legislative body.

In 1973, the Congress enacted the District of Columbia "Home Rule" Act, Pub. L. No. 93-198, 87 Stat. 774 (1973), which established the District of Columbia Council as the District's legislative body for most purposes. The Council, in 1975, enacted an amendment to the existing UB tax, D.C. Code Ann. § 47-1574, which purported to remove an exemption which had previously exempted professionals and personal service businesses from the UB tax. Insofar as that amendment subjected nonresident professionals to the UB tax, it ran afoul of a provision in the "Home Rule" Act which expressly prohibited the Council from imposing a "commuter tax," defined as "any tax on the whole or any portion of the personal income . . . of any individual not a resident of the District. . . ." D.C. Code Ann. § 1-147(a)(5) (1978 Supp.).

In 1977, Richard A. Bishop, a resident of Virginia practicing law in the District of Columbia, filed a suit in the Superior Court of the District for a refund of UB taxes paid under protest. His

claim was based upon the contention that the UB tax was, and had always been, an income tax, that the Council, in removing the former exemption for professionals, had imposed an income tax upon him, and that the restrictions in the "Home Rule" act rendered the imposition of an income tax on nonresidents unlawful. The District of Columbia government defended the suit on the ground that the UB tax was a franchise tax because it was actually imposed upon the privilege of doing business in the District, even though it was measured by the taxpayer's net income.

■ From an adverse ruling by the Superior Court, the taxpayer appealed to the District of Columbia Court of Appeals, the highest court of that jurisdiction. The Court of Appeals held, in *Bishop* v. *District of Columbia*, 401 A.2d 955 (D.C. 1979), *aff'd en banc*, 411 A.2d 997 (D.C. 1980), *cert. denied*, 446 U.S. 966 (1980), that the UB tax here under consideration was an income tax, not a franchise tax. *Id.* at 960. In so holding, the *Bishop* court considered, and expressly rejected, the arguments advanced by the State Tax Commissioner in the present case: (1) that the label given the UB tax by Congress is an important consideration, and (2) that a tax measured by net income is not necessarily an income tax. With respect to the Commissioner's first argument, the *Bishop* court said, "[a]s to the characterization of a tax, it is fundamental that the nature and effect of a tax, *not its label*, determine if it is an income tax or not." *Id.* at 958 (citations omitted) (emphasis added). With respect to the Commissioner's second argument, the *Bishop* court said, "a tax on gross receipts is not an income tax; *a tax on net income is so*, regardless of its nomenclature." *Id.* at 960 (citation omitted) (emphasis added).

■ We are bound by the interpretation given by the highest court of a sister jurisdiction to the law of that jurisdiction. In *Elmendorf* v. *Taylor*, 23 U.S. (10 Wheat.) 152 (1825), Chief Justice Marshall wrote, for a unanimous Court, the following:

This Court has uniformly professed its disposition, in cases depending on the laws of a particular State, to adopt the construction which the Courts of the State have given to those laws. This course is founded on the principle, supposed to be universally recognised, that the judicial department of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus, no Court in the universe, which professed to be gov-

erned by principle, would, we presume, undertake to say, that the Courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes, and therefore erect itself into a tribunal which should correct such misunderstanding.

*Id.* at 159-60. *Accord Shelby* v. *Guy*, 24 U.S. (11 Wheat.) 361, 367 (1826); *Town of South Ottawa* v. *Perkins*, 94 U.S. 260, 268 (1876).

■ It has long been the universal rule in this country, as a necessary consequence of our federal system embracing multiple sovereigns, that the decisions of the highest court of a jurisdiction, interpreting the law of that jurisdiction, are controlling authority in the courts of all other States as well as in the Federal courts. *Nimick & Co.* v. *Iron Works*, 25 W.Va. 184, 192 (1884). *Accord News Pub. Co.* v. *Denison-Pratt Paper Co.*, 94 W.Va. 236, 247-49, 117 S.E. 920, 924-25, *cert. denied*, 263 U.S. 714 (1923) and 265 U.S. 588 (1924). This principle applies even where the construction given by the foreign court to its law is directly opposite to the construction the domestic court gives to its own law. *Gilchrist* v. *West Va. Oil, etc., Co.*, 21 W.Va. 115, 119-20 (1882).

These principles are no strangers to our jurisprudence; we have consistently followed them. For example, in *Norman* v. *Baldwin*, 152 Va. 800, 148 S.E. 831 (1929), we said: "It has been repeatedly held by the Supreme Court of the United States, that the construction of a State statute, given by [its] highest appellate court, is binding on all courts. With all of this we are in accord." *Id.* at 810, 148 S.E. at 834. *Accord Department of Taxation* v. *Smith*, 232 Va. 407, 410, 350 S.E.2d 645, 647 (1986); *Fourth Nat. Bank* v. *Bragg*, 127 Va. 47, 60-61, 102 S.E. 649, 653 (1920).

■ Applying the construction given the UB statute by the highest court of the District of Columbia, we hold that it is an income tax. Because the trial court erred in granting summary judgment in the Commissioner's favor, we will reverse the judgment and remand the case to the trial court with direction to ascertain the credit due the taxpayer and order appropriate relief, consistent with this opinion.

*Reversed and remanded.*

JUSTICE LACY, with whom CHIEF JUSTICE CARRICO and JUSTICE COMPTON join, dissenting.

The Virginia General Assembly has authorized Virginia taxpayers to receive credit for taxes paid to other jurisdictions under certain circumstances. Code § 58-151.015 limits the credit, as pertinent to this case, to circumstances in which a Virginia resident

> has become liable for income tax to another state, on earned income or business income, or any part thereof, . . . derived from sources without the Commonwealth and subject to taxation under this chapter. . . .

Once the taxpayer submits proof of payment, his Virginia income tax liability is credited with "the income tax so paid by him to such other state," according to the formula set out within the statute. *Id.* Thus, to qualify for the credit, the tax paid must be both an income tax and a tax on earned income or business income. A franchise tax, license tax, excise tax, or any other type of tax, although applied to earned or business income, does not qualify for a credit under this section.

The issue in this case is whether King's tax payments to the District of Columbia meet the criteria set out in § 58-151.015 and, therefore, qualify for the Virginia tax credit. The majority, however, holds that this Court is not allowed to apply the Virginia criteria to the UB tax because the courts of the District of Columbia have already determined that the UB tax is an income tax and therefore the UB tax qualifies for a credit under Virginia law. I disagree.

The majority's position is flawed in two respects. The principles cited by the majority are grounded in notions of comity and full faith and credit. But those principles do not prohibit this Court from interpreting the laws of this Commonwealth.

> The history and application of the full faith and credit clause show that it was not intended to be an unrestricted and inexorable mandate to be used to subordinate or set at naught one state's sovereign powers to those of another. Its purpose is to integrate and harmonize the administration of justice under the independent legal systems of the several

states, and its office is to insure certainty and order where conflict and chaos might otherwise obtain.

The policies of a state that involve its public acts, records, judicial proceedings, fundamental laws or like sovereign rights and interests do not fall within the spirit or intended purpose of the *clause*, and thus may not be controlled by the judicial proceedings of another state.

*Wallihan* v. *Hughes*, 196 Va. 117, 129, 82 S.E.2d 553, 561 (1954) (emphasis added). Here, we are required to interpret our own public act. Whether the UB tax is a franchise tax or an income tax for purposes of the law of the District of Columbia has little relevance to whether it meets Virginia criteria for a tax credit. The majority abdicates this Court's prerogative and responsibility to interpret and apply the laws of this Commonwealth.

The majority's position is further flawed in that it imposes upon the Virginia statute an interpretation of the UB tax found in *Bishop* v. *District of Columbia*, 401 A.2d 955 (D.C. 1979), *aff'd en banc*, 411 A.2d 997 (D.C. 1980), a case in which the issue before the court was neither identical, nor even similar, to the issue at hand. The *Bishop* court identified the central issue before it as whether the ordinance passed by the City Council violated "the limitation imposed on the legislative authority of the Council," which limitation prohibited the Council from imposing "any tax on the whole or any portion of the personal income, either directly or at the source thereof, of any individual not a resident of the District." *Id.* at 956 (citation omitted).

The *Bishop* court had to determine whether the UB tax on professionals was *any tax* on *any portion* of the *personal income* of a nonresident and, therefore, whether the tax violated the Home Rule Act. To resolve the issue, the *Bishop* court decided that it had to examine the incidents of the tax:

The District of Columbia Code calls this tax an unincorporated business franchise tax. Even if we were to find that in form and substance the unincorporated business tax is a franchise tax, however, our inquiry would not stop there. Franchise taxes can be considered property taxes, excise taxes, gross income taxes, and most importantly income taxes, depending on the incidents of taxation.

*Id.* at 959 (footnote omitted). In their analysis, the *Bishop* court determined that the UB tax was a tax on net income which "tax burdens the taxpayer personally." *Id.* at 961. As a result of this analysis, the *Bishop* court held that "the professional tax here at issue is an invalid exercise of the City Council's legislative authority under the Home Rule Act." *Id.* at 961. The *Bishop* analysis and holding do not answer the question whether the UB tax paid by King, a nonprofessional, is an income tax on earned or business income under Virginia law.

By erroneously concluding that *Bishop* is determinative and must be applied in this case, the majority has deprived this Court of the ability to engage in an analysis of what constitutes an "income tax . . . on earned or business income" for purposes of the Virginia tax credit. We are precluded from considering whether, as used in § 58-151.015, "income tax" means a tax on net income, gross income, or some combination thereof. If the Virginia tax laws identified the expense elements which would be allowed as deductions from gross income to arrive at net income, the majority's reasoning would preclude us from examining the UB tax to determine if that tax would be a tax on net income as defined by the Virginia Code. The majority's rationale ignores the fact that, since 1959, our Department of Taxation has denied a credit for the UB tax under Code § 58-151.015.

More importantly, we are precluded from considering Virginia precedent holding that the label given a taxing statute is very important and is entitled to considerable weight when analyzing the tax. *Department of Taxation v. Smith*, 232 Va. 407, 411, 350 S.E.2d 645, 647 (1986); *Commonwealth v. Shell Oil Co.*, 210 Va. 163, 166, 169 S.E.2d 434, 436 (1969).[1] Likewise, we cannot review previous cases holding that taxes labeled franchise, license, or occupation taxes by the taxing authority are not income taxes or taxes on income, "notwithstanding the fact that the amount of tax payable by an individual may be measured by the amount of business which he transacts or his earnings therefrom." *Commonwealth v. Werth*, 116 Va. 604, 609, 82 S.E. 695, 696 (1914) (citations omitted). *See also Langston v. City of Danville*, 189 Va.

---

[1] In enacting the UB tax, Congress labeled it a franchise tax, and stated that it was levied "for the privilege of carrying on or engaging in any trade or business within the District." D.C. Code Ann. § 47-1808.1, -1808.3 (1981). This language has remained constant since the original enactment in 1947.

603, 607, 54 S.E.2d 101, 104 (1949); *Hunton* v. *Commonwealth*, 166 Va. 229, 244, 183 S.E. 873, 879 (1936).[2]

In short, the majority precludes this Court from the type of analysis engaged in by the *Bishop* court to determine what constitutes an income tax on earned or business income under the laws of this Commonwealth. We are required to adopt the principles and analyses chosen by the District of Columbia court when it determined whether an act of the City Council violated its legislative authority. In my opinion, whether King is entitled to a credit against his Virginia tax liability under § 58-151.015 based on UB tax payments made to the District of Columbia is a matter of Virginia law which should be decided by this Court, not by the District of Columbia Court of Appeals.

Based on the legislative classification placed on the UB tax by Congress, the consistent interpretation of the Virginia statute by the Tax Commissioner, and the previously cited Virginia precedent, I would affirm the decision of the trial court.

---

[2] Although the *Bishop* court would limit these holdings to cases where the tax is measured by gross income, rather than net income, our cases are not so limited.