## CIRCUIT COURT OF WARREN COUNTY

Vaughn Realty
of Front Royal,
Inc., et al.

v.

Town of Front Royal

September 21, 1992

Case No. (Law) 92–133

By Judge John E. Wetsel, Jr.

This case came before the Court sitting without a jury on September 18, 1992, for trial on the issue of whether Vaughn Realty of Front Royal, Inc., had permanently ceased its business so as to entitle it to a refund of a prorated portion of its 1990 business license tax pursuant to Virginia Code § 58.1–3710. The Plaintiffs appeared with their counsel, Douglas W. Napier, Esq., and the Town by its Attorney, David W. Crump, Jr., Esq. Evidence was heard *ore tenus* and argued by counsel. Upon consideration whereof, the Court makes the following [findings and rulings].

### I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

Vaughn Realty of Front Royal, Inc., hereinafter "Vaughn Realty," was a Virginia corporation and real estate brokerage operating in the Town of Front Royal, County of Warren, Virginia, at 410 South Royal Avenue, Front Royal, Virginia, and its sole stockholders were Donald W. Vaughn and Frances Vaughn.

Donald W. Vaughn was the vice president, majority stockholder, and a director of Vaughn Realty and is now a trustee of the former corporate assets of Vaughn Realty.

The Town of Front Royal, Virginia, hereinafter "the Town," is a municipal corporation and has in force a business license tax ordinance enacted pursuant to Virginia Code § 58.1–3700, *et seq.*, and Vaughn Realty paid the applicable business license tax of $2,066.00 for calendar year 1990.

On July 3, 1990, Vaughn Realty sold its operating assets to Gibbs and Bennett, Inc., Realtors (hereinafter "Gibbs and Bennett") by a contract of that date, Plaintiff's Exhibit 10, which provided, *inter alia*, that:

(a) Vaughn Realty sold to Gibbs and Bennett all the assets of Vaughn Realty, including accounts receivable, personal property, and goodwill.

(b) Vaughn Realty agreed to pay all its business expenses incurred prior to July 3, 1990, including a $1,000 bonus to be paid to Jean Cornwell, secretary for Vaughn Realty.

(c) Gibbs and Bennett was permitted to practice the real estate trade under the fictitious name of Vaughn, Gibbs and Bennett, and Vaughn, Gibbs and Bennett has continuously done business since July 3, 1990.

(d) Donald Vaughn shall hang his real estate license with Gibbs and Bennett and was permitted to practice real estate as an associate broker with the firm of Gibbs and Bennett so long as is mutually agreeable to the parties.

(e) Vaughn Realty's share of any commissions received by Gibbs and Bennett after July 3, 1990, were to be paid to Donald W. Vaughn, individually.

Since July 3, 1990, Gibbs and Bennett has rented 410 South Royal Avenue, the former business location of Vaughn Realty, from Donald W. Vaughn and Frances Vaughn as individuals, who are the owners of that real property.

On July 3, 1990, Gibbs and Bennett received Vaughn Realty's escrow monies, ledger sheets, and other corporate records relating thereto, and from that date forward, Gibbs and Bennett was responsible for those funds and records in accordance with the rules and regulations of the Virginia Real Estate Board.

Vaughn Realty surrendered its real estate license to the Virginia Real Estate Board in Richmond, Virginia, on or about July 5, 1990, and has never been reissued another license.

On December 10, 1990, Vaughn filed its "Final Federal and Virginia Corporation Income Tax Returns" for the period of June 1,

1990, to November 30, 1990, indicating for tax purposes Vaughn Realty had ceased to exist.

On December 10, 1990, Vaughn Realty filed a certificate of dissolution with the State Corporation Commission.

After July 3, 1990, Vaughn Realty owned and possessed no assets, had no telephone, and received no rental payments or any other income. All transactions after that date were solely incident to its winding up of its business, paying its final taxes, and formally terminating its corporate existence. Vaughn Realty did maintain a savings account to hold real estate commissions earned by two of Vaughn Realty's salesmen prior to July 3, 1990, which were held for tax purposes until the next fiscal year ending May 31, 1991, when the commissions were paid at the agents' request and pursuant to advice given by Vaughn Realty's accountant.

Donald Vaughn has asked the Town to refund a prorated portion of the 1990 business license tax that Vaughn Realty paid for that portion of that year after July 3, 1990.

The Town has refused to refund the business license tax to Vaughn Realty on the ground that Vaughn Realty had not permanently ceased to engage in business in 1990, but rather continued to do business incident to winding up its affairs until its Articles of Dissolution were filed on December 10, 1990.

## II. *Conclusions of Law*

Virginia Code § 58.1–3710, provides that:

[N]o . . . town shall impose a license tax based on gross receipts on a business . . . or corporation for any fraction of a year during which such . . . corporation has permanently ceased to engage in such business . . . within the town. In the event a . . . corporation *ceases to engage in a business within . . . a town* during a year for which a license tax . . . has already been paid, the taxpayer shall be entitled, upon application to a refund for that portion of the license tax already paid, prorated on a monthly basis so as to ensure that the licensed privilege is taxed only for that fraction of a year during which it is exercised within the town. (Emphasis added.)

The key inquiry in this case is what is the meaning of the statutory phrase "ceases to engage in a business within . . . a town during a year." Apparently, this statute has not previously been interpreted by

a court in Virginia. However, the words of the statute are not technical or ambiguous, and "[i]t is well settled that when a statute is clear and unambiguous, its plain meaning must be accepted without resort to extrinsic evidence or the rules of construction." *Compton v. Commonwealth*, 239 Va. 312, 314, 389 S.E.2d 460 (1990). If construction were required, it would be governed by the principle that: "Statutes imposing taxes must be construed most strongly against the Commonwealth and in favor of the taxpayer. Such enactments should not be extended by implication beyond the clear import of the language used." *Commonwealth v. General Electric*, 236 Va. 54, 64, 373 S.E.2d 599 (1988).

The tax in question is a business license tax imposed on the gross receipts of the business for the privilege of doing business in the town. *See, Commonwealth v. Shell Oil Co.*, 210 Va. 163, 166–167, 169 S.E.2d 461 (1969) (excise tax on fuel distinguished from business license tax); 51 Am. Jur. 2d *Licenses & Permits* § 107; and 9 McQuillen Municipal Corporations § 26.32 (3rd Ed). The statutory tax scheme is based on the relationship between the business done and the money to be taxed. *See* §§ 58.1–3708 and 58.1–3709. In *Krause v. City of Norfolk*, 214 Va. 93, 95, 197 S.E.2d 205 (1973), the Supreme Court interpreted the phrase "engaged in business" used in the predecessor to present § 58.1–3703 which is the predicate for the imposition of the business license tax:

> Thus the city has been delegated the power to levy license taxes on those "engaged in business." The term "engaged in business" is well defined in common law.
>
> It means a course of dealing which requires the time, attention and *labor of the person so engaged for the purpose of earning a livelihood or profit* . . . . It implies a continuous and regular course of dealing, rather than an irregular or isolated transaction, in the absence of a statute specifically providing otherwise. (Citations omitted). *Young v. Town of Vienna*, 203 Va. 265, 267, 123 S.E.2d 388, 390 (1962) (Emphasis added).

After July 3, 1990, Vaughn Realty was not engaged in business "for the purpose of earning a livelihood or profit . . . ." Therefore, it had then ceased doing business insofar as the business license tax statutes are concerned.

Whether or not a business has permanently ceased to do the business in the locality which imposed the business license tax is a deter-

mination of fact. 1985–1986 Report of Attorney General, p. 289. For instance, where the taxpayer moves his business from the taxing locality to another locality and continues to do business only in the new locality, the taxpayer is entitled to a prorated refund when he moves from the taxing locality in the middle of the tax year. 1983–1984 Report of the Attorney General, pp. 376–377. Obviously, such a taxpayer may continue to receive income in the form of accounts receivable from the old location, but he is no longer "doing business" in that locality. *Eastern Life v. Commonwealth*, 205 Va. 287, 136 S.E.2d 903 (1964), is the closest case on point. In that case, the taxpayer had paid a license tax to the State Corporation Commission on March 28, 1963, based upon its 1962 receipts for license year expiring April 30, 1963. On April 30, 1963, the taxpayer sold its assets and "ceased to do business." Under those facts, the only reason that a refund was not ordered was because the tax statute in question did not authorize a refund, which is not true in the instant case.

Vaughn Realty permanently ceased doing business in the Town as of July 3, 1990, all subsequent activities were merely done incident to its winding up its business. Had the Vaughns sold their business and then moved to another county in Virginia, Donald Vaughn's activities in winding up their Front Royal business would clearly not require him to get a business license in the new locality, and the result should not be different simply because he remained in Front Royal.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that Vaughn Realty is entitled to a prorated refund of the business license tax it paid for the period from July 3, 1990, to December 31, 1990, a total of $1,033.00.