## CIRCUIT COURT OF FAIRFAX COUNTY

Hans D. Giesecke
and Patricia A. Giesecke

v.

Department of Taxation

September 22, 1994

Case No. (Law) 124781

BY JUDGE ROSEMARIE ANNUNZIATA

The plaintiffs in this case, Hans D. Giesecke and his wife Patricia A. Giesecke, have brought this action asking the Court to declare proper certain tax credits they applied to their payment of Virginia income tax in 1990 and 1991, and to further declare that the Commonwealth's disallowance of the credits is invalid. The relevant facts are as follows.

Mr. Giesecke is a shareholder in a Delaware Corporation which elected to be treated as a sub-chapter S corporation under the tax laws of the United States. During the periods relevant to this matter, the Corporation was located within the District of Columbia where it was assessed by and paid to the District certain corporate franchise taxes. In their personal income tax returns for tax years 1989 and 1990, filed in 1990 and 1991 respectively, the plaintiffs treated the corporate franchise taxes paid to the District of Columbia as an income tax and claimed credits for those payments under Virginia Code § 58.1-332 (formerly Code § 58-151.015).

The first sentence of subsection (A) of Virginia Code § 58.1-332 contains the language upon which plaintiffs relied in taking the tax credit. The sentence has not been altered by later amendments and reads now, as it did when the plaintiffs took their credit:

> Whenever a Virginia resident has become liable to another state
> for income tax on any earned or business income for the taxable
> year, derived from sources outside the Commonwealth and sub-

ject to taxation under this chapter, the amount of such tax payable by him shall, upon proof of such payment, be credited on the taxpayer's return with the income tax so paid to the other state.

Subsequently, the credits were disallowed by the Commonwealth of Virginia and the plaintiffs were assessed additional taxes for the tax years in question, which they then paid under protest. For the reasons stated below, the taxpayers' motion for declaratory judgment in their favor is denied.

The plaintiff taxpayers in this case rely on the Virginia Supreme Court decision enunciated in *King v. Forst*, 239 Va. 557 (1990), in support of the position they advance. In *King*, the Court found that the District's unincorporated business tax was an income tax for the purpose of the § 58.1-332 credit.

It should be noted that the facts in *King* did not involve the tax at issue in this case, namely the District's corporate franchise tax. Rather, the Virginia Supreme Court addressed the taxpayers' payment of the District's unincorporated business tax. While, arguably, the Court's reasoning in *King* could have applied equally to the tax at issue here, the corporate franchise tax was not specifically found by the Virginia Supreme Court to qualify for the § 58.1-332 credit. Nor has any other Virginia court nor the Department of Taxation ever treated the corporate franchise tax paid to the District of Columbia as an income tax under Virginia tax laws governing credits to be given for out-of-state tax payments.

Prior to the *King* decision, the Virginia Department of Taxation, pursuant to its statutory duty to interpret and apply the tax laws of the Commonwealth (*see* Va. Code § 58.1-200 et seq.), since 1959 had consistently treated unincorporated business taxes, and other analogous taxes paid to the District of Columbia, as not qualified for the credit claimed in *King*. *See King*, 239 Va. at 563-64 (dissenting opinion). The Department's position was set forth, *inter alia*, in the "Instructions for Preparing Resident Forms 760 and 760 S, Virginia Individual Income Tax" which were provided to Virginia taxpayers. These instructions were used as a reference by the plaintiffs in this case. They contend, however, the instructions allowed the credits, a position which is not sustained from a reading of the relevant instructions as a whole.

Under the heading entitled "Credits", the following language appears in both the 1990 and 1991 instruction booklets:

> Generally, Virginia will allow taxpayers filing resident individual income tax returns to claim credit for income tax paid to another state for earned or business income deriv?d from sources outside Virginia, provided the income is taxed by Virginia as well as the other state . . . .
>
> A Virginia resident *cannot* claim an out-of-state tax credit on the *Virginia* return for taxes paid as a non resident to the following states . . . District of Columbia . . . . [Emphasis in the original.]

In the line-by-line instruction section entitled "Credit for Income Tax Paid to Another State" and upon which the plaintiff's claim they relied, the following language appears:

> If you were a shareholder in an S corporation, which paid income tax to a state which imposes an income tax upon the S corporation, enter your share of the income subject to tax shown on the S corporation income tax return filed with the other state.

The plaintiffs invoke the line-by-line instructions to support their position, reading it in isolation from and unmodified by the preceding general instruction which clearly excludes taxes paid to the District of Columbia from those for which available credits can be taken. The line-by-line instruction must be read to apply only to *qualified* sub-chapter S shareholder taxpayers, as "qualified" is defined earlier by the general instruction.

During the next regular session following the *King* decision, and in response to it, the Virginia General Assembly adopted a retroactive amendment of Va. Code § 58.1-332, explicitly incorporating the Department's interpretation of the statute regarding the allowance and disallowance of credits to Virginia taxpayers for taxes paid to other states. In pertinent part, the amendment provides:

> However, no franchise tax, license tax, excise tax, unincorporated business tax, occupation tax or any tax characterized as such by the taxing jurisdiction, although applied to earned or business income, shall qualify for a credit under this section, nor shall any tax which, if characterized as an income tax or a commuter tax, would be illegal and unauthorized under such other state's controlling or enabling legislation qualify for a credit under this section.

The provisions of the amended section were made effective for taxable years beginning on or after January 1, 1987. 1991 Va. Acts 362, p. 560, and 456, p. 710. The only exception made to the amendment's retrospective reach was for taxpayers who had paid taxes to the Commonwealth without applying the credit and who had filed a protective claim for refund with the Department prior to the date of the introduction of the amending bill. *See* Va. Code § 58.1-332 and § 58.1-1824. Among the considerations underlying the provision for retroactive application of the amendment was the prospective loss of $20.7 million dollars in the 1991 fiscal year and $4.7 million in the 1992 fiscal year.

Assuming the *King* decision governs the plaintiffs' rights in this case, thereby entitling them to the credits pursuant to the *King* ruling, the issue to be determined by this Court is whether the amendment to § 58.1-332 effectively and properly denied those credits retrospectively for taxes paid to the Commonwealth in tax years beginning on or after January 1, 1987.

That the amendment, by its very language, clearly denies the plaintiffs credits for the payment of franchise taxes paid to the District of Columbia for the years in question is beyond dispute. Their claim that the legislation is an unconstitutional retroactive application of law must be further examined, however.

Taxpayer challenges to the legislature's power to enact retrospective tax law are well-documented. *See, e.g., United States v. Carlton*, 129 L. Ed. 2d 22, 28 (1994); *Welch v. Henry*, 305 U.S. 134, 146-149 (1938); *Colonial Pipeline Co. v. Commonwealth*, 206 Va. 517, 521-522 (1965); *Whitlock v. Hawkins*, 105 Va. 242 *passim* (1906). It is settled law, however, that the retroactive application of taxing statutes does not necessarily make the laws unconstitutional. *Id.* The chief infirmity to be avoided by the legislature in enacting such retrospective tax law is the denial of due process. *Id.* In cases where the due process of law is infringed, the retroactive law will be deemed invalid. *See Colonial Pipeline*, 206 Va. at 521 ("Such a statute is valid if it is not arbitrary and does not disturb vested rights, impair contractual obligations or violate due process.") (citations omitted). *See also* cases cited in *Welch v. Henry*, 305 U.S. at 147.

The legislation before the Court in this case does not impair contractual obligations. Nor does it abrogate vested rights. As noted by the Virginia Supreme Court in *Colonial Pipeline*, 206 Va. at 521, "No one has the vested right to be free of taxation, nor does he have the constitutional right to know that a tax will be levied in such a manner that he may avoid it."

*See also Carlton*, 129 L. Ed. 2d at 30 ("Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code.")

Nor is the legislation arbitrary or irrational. Where the legislation is not "so harsh and oppressive as to transgress the constitutional limitation," *Colonial Pipeline*, 206 Va. at 522 (citing *Welch*, 305 U.S. at 147), and where it is "supported by a legitimate legislative purpose furthered by rational means," due process considerations are satisfied. *Carlton*, 129 L. Ed. 2d at 28.

The application of the due process analysis appears to have generated two tests. (1) Should the taxpayer reasonably have known that the statute at issue would be amended with retroactive application as to them? *Colonial Pipeline*, 206 Va. at 517; *Welch* 305 U.S. at 147-148;[1] and (2) Whether the period of retroactive application of a tax statute is reasonable? *Colonial Pipeline*, 206 Va. at 522; *Welch*, 305 U.S. at 147-150; and *Carlton*, 129 L. Ed. 2d at 31, 33 (O'Connor, J., concurring).

Virginia Code § 58-1.332 as amended withstands constitutional challenge under both tests. First, the evidence in this case establishes that the taxpayers should have known that the challenged statute would be amended and subject them to the tax. Indeed, it appears the taxpayers, in fact, knew of the legislative action and its probable effect on them prior to claiming the credit for tax year 1989 on their 1990 tax form and in the subsequent year under challenge.

Second, the period of the law's three year retroactive application is not unreasonable under the facts of this case. Generally, retroactive tax statutes have been upheld against due process challenge when the retroactive period is a relatively short period. In *Colonial Pipeline*, 206 Va. at 520-21, for example, the period of retroactive application was limited, reaching only to the beginning of the year in which the statute in question was enacted. *See also Carlton*, 129 L. Ed. 2d at 33 (O'Connor, J., concurring), and *Welch*, 305 U.S. 134. *But see Wilgard Realty Co. v. I.R.S.*, 127 F.2d 513 (2d Cir. 1942), in which a retroactive period of six years was upheld.

The competing interests weighed by the courts addressing these questions are the taxpayer's need for "finality and repose," the taxpayers's need to be free from the imposition of a "wholly new tax" by retroactive

---

[1] However, it would appear that detrimental reliance on the preamendment version of a tax law and/or lack of notice alone may not be sufficient to establish a constitutional violation. *See Carlton*, 129 L. Ed. 2d at 30.

amendment, *Carlton*, 129 L. Ed. 2d at 33 (O'Connor, J., concurring), and the need for government to act equitably in distributing its costs, in light of changing needs and expected sources of income. As noted in *Welch*, regarding the latter consideration:

> The equitable distribution of the costs of government through the medium of an income tax is a delicate and difficult task. In its performance experience has shown the importance of reasonable opportunity for the legislative body, in the revision of tax laws, to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources and amounts of the various classes of taxable income during the taxable period preceding revision. Without that opportunity accommodation of the legislative purpose to the need may be seriously obstructed if not defeated.

*Welch*, 305 U.S. at 149. Among the considerations specifically addressed by the courts in determining the reasonableness of the period of retroactive application are: (1) the legislative practices which may govern that body's ability to timely respond to the need for tax law amendments,[2] and (2) the nature of the tax.[3] *Millikan v. United States*, 283 U.S. 15, 21 (1930).

In this case, the amendment was adopted by the legislature at its first regular session after the Court's decision in *King*. While the period of retroactive application of § 58.1-332 is longer than generally found acceptable, the legislative adoption of the retroactive period is reasonable under the circumstances. At the time of the *King* decision, the position of the Virginia Department of Taxation on this question was consistent and long-standing; after the *King* decision, the legislature acted promptly. In amending § 58.1-322, the legislature did not create "wholly new law" to which the taxpayers were subjected contrary to their legitimate expectations of finality and repose. Rather, it codified the position which the Department of Taxation had enunciated to taxpayers in Virginia on the issue of available credits since 1957 and upon which, until the year 1989,

---

[2] For example, in *Carlton*, where the legislature met only biannually and it amended the code "at the first opportunity after the tax year in which the income was received," the period was found to be reasonable. *Carlton* at 33 (O'Connor, J., concurring); *see also Colonial Pipeline*, 206 Va. at 521-522.

[3] For example the judicial review of the propriety of retroactive amendments to gift tax legislation can markedly differ from the review accorded amendments to income tax law. *See Welch*, 305 U.S. at 147-148.

the legislature could rely as a source of funds to pay for current and projected costs of government. It cannot be said "in view of well established legislative practice, both state and national, taxpayers can justly assert surprise or complain of arbitrary action in the retroactive apportionment of tax burdens to income at the first opportunity after knowledge of the nature and amount of the income is available." *Welch*, 305 U.S. at 150.

In summary, the amendment to Va. Code § 58.1-332, denying plaintiffs the credits claimed on their tax returns for the tax years 1989 and 1990, was not a denial of their due process rights, being neither unreasonable or arbitrary nor so harsh or oppressive as to render it invalid.